## ARGUED AND DETERMINED

### IN THE

# SUPREME JUDICIAL COURT

### OF

# MASSACHUSETTS,

---

ELMER E. BUTMAN *vs.* CITY OF NEWTON.

Middlesex.   November 21, 1900. — May 22, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

*Municipal Corporations*, Officers and Agents.   *Negligence.*

If a city or town, instead of leaving the repair of its ways to the public officers designated by the statutes, undertakes to make the repairs by its own agents, it is liable for injuries caused by their negligence.

The city of Newton by ordinance provided, that, under the supervision of a joint standing committee of the common council and board of aldermen, the superintendent of streets should have the charge of the making, widening and altering of streets and ways. *Held,* that this made the superintendent of streets the agent of the city, and that the city was liable for an injury caused by the negligence of workmen under his direction operating a stone crusher to prepare material to be used in constructing a new street.

When city authorities are repairing or constructing a street, one who drives between wooden horses bearing the sign "No passing through," which have been placed across the way or are temporarily standing lengthwise at the side of the road in such a position as plainly to indicate that it is not open to travel, does so at his own risk.   In this case, however, the evidence was conflicting and would justify a finding that the part of the way on which the plaintiff was driving was open to travel.

To dump a load of stone on the wooden platform of a stone crusher and start up the engine of the crusher letting off steam just as a horse which is being driven

on a roadway twenty-five feet away and in plain sight is opposite to it, may be found to be a negligent act on the part of the agents of a city operating the crusher.

TORT to recover for injury to the plaintiff and his carriage from his horse being frightened by the dumping of a load of stone on the wooden platform of a stone crusher and the letting off of steam from the engine of the crusher by the agents and servants of the defendant while operating the crusher near Commonwealth Avenue in Newton on which the plaintiff was driving. Writ dated March 19, 1898.

At the trial in the Superior Court, before *Dewey*, J., the following facts appeared:

Commonwealth Avenue between Auburn Street and Charles River was laid out by the city of Newton April 30, 1895. Appropriations were made for its construction which was proceeding at the time of the injury to the plaintiff.

Charles W. Ross was at the time superintendent of streets of the defendant. As such superintendent he had charge of the apparatus used in the construction of the streets and employed and discharged the men.

The city of Newton was incorporated by St. 1873, c. 326.

Section 14 authorized the city council to elect among other officers a superintendent of streets. St. 1882, c. 210, amending the charter, by § 7 authorized the city council " to establish by ordinance such offices as may be necessary for any municipal purposes." Thereafter by Ordinance 16 of 1883 the city established the office of superintendent of streets, and defined the duties of the superintendent.

The ordinances were revised in 1894, and chapter 11 contained the following provisions:

" Sect. 1. The superintendent of streets shall, under the direction of the highway surveyors, have the general care and charge of highways and streets, of sidewalks and bridges, and cause them to be kept in good repair. He shall see that all nuisances and obstructions are removed, or give notice thereof to the surveyors.

" Sect. 2. Whenever any highway, street, sidewalk or bridge is unsafe for travel, the superintendent of streets shall erect suitable fences to prevent travel upon such parts thereof as are

unsafe, and shall cause such places to be sufficiently lighted at night.

"Sect. 3. Under direction of the joint standing committee on highways, the superintendent of streets shall have supervision of the construction and repair of all drains, except as otherwise provided by ordinance; the making, widening, and altering of streets and ways, and the care of shade trees therein. He shall have charge of the city teams and stables, and disposing of manure from same, other than those used by the fire and police departments, and shall make all necessary arrangements for cleaning the streets." *

The joint standing committee referred to in the section last quoted was made up of members of the city council.

Commonwealth Avenue as laid out included parts of former streets of the city of Newton and other land taken for the purposes of the street. The accident to the plaintiff occurred at a point in the street included in an old street known as Ash Street, but the crusher was not in this part of the street. The evidence showed that the plaintiff's horse was frightened by the dumping of stone upon the platform of a stone crusher adjacent to the travelled part of this former street known as Ash Street. The stone crusher was a machine used for crushing and preparing stones for the construction and repair of streets. It had a wooden platform upon which the stone was dumped before it was thrown into the hopper of the crusher. The crusher was operated by a steam engine with the usual boilers and apparatus connected with the crusher by means of pulleys and bands. It was preparing material to be used in constructing the new street.

The accident occurred upon the ninth day of May, 1896, between nine and ten o'clock in the forenoon. At that time the road was in process of construction although it was passable in the direction which the plaintiff took. This part of the road was open to travel. There were piles of stone and material about, machines for construction, men, horses and carts, and other evidence that the road was being constructed. At the points of entrance of various streets to Commonwealth Avenue

---

* For the provisions relating to the street department in the present charter of the city of Newton, see St. 1897, c. 283, §§ 24, 25.

as constructed wooden horses had been placed, upon which were signs " No passing through." At the time of the accident some of these signs had been placed at the side of the road lengthwise, so as not to obstruct travel, and some were in adjoining fields but were plainly visible. The plaintiff had been over the street while in process of construction a number of times before the accident, and had seen the stone crusher and knew it was there. Commonwealth Avenue was laid out with two roadways and a reserved space between the roadways, and the roadway upon which the plaintiff was travelling was about thirty-six feet in width. The wooden platform of the crusher extended back twenty-five feet from this travelled portion of the street. The roadway for three hundred feet in the direction from which the plaintiff was coming was straight and all objects were visible thereon except that the stone crusher was partly hidden by trees until one was near it.

There was evidence that the crusher was not in operation when the plaintiff started to drive by but was started up just as his horse was opposite to it and in plain sight of 'the men who dumped the stone. When the plaintiff's horse was opposite or just beyond the crusher, the men employed upon it, in the work of preparing stone for the construction of the street, dumped upon the wooden platform a cartload of stone, the noise from which, together with escaping steam, frightened the plaintiff's horse. He ran away, threw the plaintiff out and injured him and the horse and the carriage.

There was no evidence that the committee of the city council of the city of Newton took any active part in the construction or direction of the construction of Commonwealth Avenue. The superintendent of streets, in answer to questions upon cross-examination by the plaintiff's attorney, stated that the committee had visited the work upon the street where this crusher was, but had given him no directions. The evidence also showed that the stone crusher was put up under the direction of the superintendent of streets.

The defendant asked the judge to instruct the jury, that upon the evidence the plaintiff was not entitled to maintain his action, that the city was not liable for the acts of the superintendent of streets either in placing or operating the stone crusher, that

the superintendent of streets was a public officer for whose acts and the acts of those in his employ the city was not liable, that the evidence showed that the plaintiff was not in the exercise of due care, that if the way was in process of construction and the plaintiff had knowledge thereof and proceeded nevertheless to travel thereon then he was not entitled to recover in this action, and that there was no evidence of negligence on the part of the defendant or its servants or agents.

The judge refused to give these instructions and gave other instructions which are not now material, and the defendant excepted.

The jury returned a verdict for the plaintiff in the sum of $925, and thereafter the judge reported the case for the consideration of this court. If the refusal to give the rulings requested was correct, judgment was to be entered upon the verdict; otherwise, the verdict was to be set aside and a new trial ordered.

*W. S. Slocum*, for the defendant.

*G. L. Mayberry*, for the plaintiff.

LORING, J. In this case, the plaintiff's horse was frightened by some person or persons dumping a load of stone upon the wooden platform of a stone crusher, " the noise from which, together with escaping steam, frightened the plaintiff's horse and he ran away," and caused the injury sued for. The employees who dumped the stone, and who had charge of the steam engine by which the stone crusher was run, were acting under the superintendent of streets, and were engaged in constructing Commonwealth Avenue.

1. The defendant's first contention is that the act complained of is that of a public officer for which the city is not liable.

It is established on the one hand that a town is not liable for injuries caused to a person by the negligence of those engaged in repairing a way within its boundaries, if the work is done by or under a surveyor of highways; *Walcott* v. *Swampscott*, 1 Allen, 101; *Hennessey* v. *New Bedford*, 153 Mass. 260; or by a road commissioner; *McManus* v. *Weston*, 164 Mass. 263. And on the other hand, it is also established that if a town, in place of leaving the repair of its ways to the surveyor of highways, or to road commissioners, who are the public officers designated by

the statutes to see that the highways are kept in a safe condition, (Pub. Sts. c. 52, § 3; *Nealley* v. *Bradford*, 145 Mass. 561, 563, 564; *Pratt* v. *Weymouth*, 147 Mass. 245, 255; *Blanchard* v. *Ayer*, 148 Mass. 174, 176;) undertakes to make the repairs by its own agents, it is liable for injuries caused through their negligence. *Hawkes* v. *Charlemont*, 107 Mass. 414. *Deane* v. *Randolph*, 132 Mass. 475. *Tindley* v. *Salem*, 137 Mass. 171, 172, 173. *Pratt* v. *Weymouth*, 147 Mass. 245, 254. *Brookfield* v. *Reed*, 152 Mass. 568. *Collins* v. *Greenfield*, 172 Mass. 78, 81.

The foundation of the general rule is, that the duty of repairing the public highways is the performance of a public duty imposed upon all towns alike, from the performance of which a town derives no special advantage in its corporate capacity. The exemption of the town, in those cases where it is exempt under the general rule, does not rest upon the fact, that the town has no control over the highway surveyor or the road commissioner; the rule applies in many cases where the town has full control over the officials in question; for example, it has been held to include the case of an injury caused by the negligence of firemen in hauling a hose reel to extinguish a fire, where the fire department in question was established by the town under a special act in place of leaving the matter to firewards, and where the statute gave to the engineer and other officers of the fire department of the town the authority and duties of firewards. *Hafford* v. *New Bedford*, 16 Gray, 297. *Fisher* v. *Boston*, 104 Mass. 87. And see *Buttrick* v. *Lowell*, 1 Allen, 172; *Howard* v. *Worcester*, 153 Mass. 426; *Sampson* v. *Boston*, 161 Mass. 288; *Pettingell* v. *Chelsea*, 161 Mass. 368. The general rule, as we have said, includes all cases where the town is performing a public duty, imposed upon all towns alike, from the performance of which it derives no special advantage in its corporate capacity.

A town which undertakes to make repairs on ways within its limits, by its own agents, is an exception to the general rule. In that case it has a pecuniary interest in the matter by reason of its statutory liability for a defect in the way; this distinction is pointed out and the whole subject is so exhaustively stated by C. Allen, J., in *Tindley* v. *Salem*, 137 Mass. 171, 172, 173, that it is not necessary to restate the reasons at length in this case. It

may be added, however, to what was said there, that while a town has, by statute, a remedy over against the surveyor of highways, through whose fault or neglect the way came to be in a defective condition, in a case where it has been fined for allowing a way to be out of repair, (see Pub. Sts. c. 27, § 128,) it has no remedy over to recover the amount of a judgment against it for injuries suffered by a traveller from a defect in the way caused by the negligence of the surveyor. *White* v. *Phillipston,* 10 Met. 108.

It appears from the report in the case at bar that Commonwealth Avenue, including that part of it on which the plaintiff was driving, when the accident complained of occurred, was laid out by the city of Newton. We assume, therefore, that it was a town way and was laid out under § 24 of the charter of the defendant city. St. 1873, c. 326. The laying out of a public way is the performance of a public duty imposed upon all towns and cities alike, from the performance of which they derive no special advantage in their corporate capacity, and is not the institution by the city of work for its own particular use and benefit. The defendant city, therefore, is not liable in this case, because it had directed work to be done for its benefit, in which case it might be under some circumstances liable for injury caused by negligence in carrying it into effect.

The expense of constructing a town way is, by the provision of our laws, to be borne by the town in which it is laid out. Pub. Sts. c. 52, § 1; c. 49, §§ 68, 75. The act of the defendant city in making due appropriations for the construction of the way did not make it liable for this accident; that act also is the performance of a public duty within the rule.

The making of public ways is not only committed to the surveyors of highways or road commissioners, as is the matter of repairing them, but both matters are covered by one and the same sections of the Public Statutes. See Pub. Sts. c. 52, §§ 3, 13. Where a city or town pursues the course thus provided for, it is not liable for injuries caused by the negligence of those engaged in constructing a way. *Taggart* v. *Fall River,* 170 Mass. 325. This rule was applied in *Jensen* v. *Waltham,* 166 Mass. 344, where a street was being constructed by a board of street commissioners the existence of which was provided for

in the charter of the defendant city, (St. 1884, c. 309, § 23,) and who were invested by an ordinance of the city with the duty of highway surveyors. See *McCann* v. *Waltham,* 163 Mass. 344, 345.

In the case at bar the city of Newton did not pursue the course set forth in the general laws for making the highways within its limits, but on the contrary, it provided by its ordinances that "Under direction of the joint standing committee on highways, the superintendent of streets shall have supervision of . . . the making, widening, and altering of streets and ways." Newton Rev. Ord. 1894, c. 11, § 3. A "joint standing committee" is a committee of the city council, made up of the common council and the board of aldermen. (See the charter of the defendant city, St. 1882, c. 210, § 2, amending St. 1873, c. 326, § 2.) In other words, the defendant city, in place of leaving the ways within its limits to be constructed in accordance with the provisions of Pub. Sts. c. 52, § 3, has preferred, having regard to its liability to travellers for defects in the way, to leave the construction of them to its own superintendent of streets, acting under the direction of the joint committee of its aldermen and common council. That makes the superintendent of streets the agent of the defendant city in this connection, and the case falls within *Hawks* v. *Charlemont,* 107 Mass. 414 ; *Deane* v. *Randolph,* 132 Mass. 475 ; *Tindley* v. *Salem,* 137 Mass. 171, 172, 173 ; *Pratt* v. *Weymouth,* 147 Mass. 245, 254 ; *Brookfield* v. *Reed,* 152 Mass. 568 ; *Collins* v. *Greenfield,* 172 Mass. 78, 81, cited above.

The defendant relies on the case of *Barney* v. *Lowell,* 98 Mass. 570. In that case, the injury complained of was caused by the negligence of the driver of a cart in which stone was being hauled from a stone crusher for the purpose of macadamizing a street, which was being repaired by the superintendent of streets. It appeared in the report in that case, that the ordinances of the defendant city provided for the appointment of a superintendent of streets, who should have charge of the repairs of streets "under the direction of the highway surveyors or joint committee on streets." It also appeared that the repairs were being made "under the direction of the committee on streets of the board of aldermen." But a pro-

vision in an ordinance that the surveyor of highways should act under the direction of the mayor and aldermen does not make him the agent of the city, *Prince* v. *Lynn*, 149 Mass. 193, and it seems to have been assumed that the superintendent of streets in that case was in fact acting " under the direction of the highway surveyors," as it was provided in the ordinance of the defendant city he might do, and not under the direction " of the joint committee on streets," which it is also provided in that ordinance could be done.

2. The defendant's second contention is that the plaintiff was driving on Commonwealth Avenue at his peril, within the rule laid down in *Jones* v. *Collins*, 177 Mass. 444. But the evidence on this point was conflicting. On the one hand, there was testimony that " Commonwealth Avenue was laid out with two roadways and a reserved space between the roadways " ; also that at the time of the accident "this part of the road " on which the plaintiff was driving " was open to travel." On the other hand, there was evidence that " there were piles of stone and material about, machines for construction, men, horses and carts, and other evidence that the road was being constructed " ; that " at the points of entrance of various streets to Commonwealth Avenue as constructed wooden horses had been placed, upon which were signs stating ' No passing through ' " ; that " at the time of the accident some of these signs had been placed at the side of the road lengthwise, so as not to obstruct travel, and some were in adjoining fields but were plainly visible." We are unable to determine from these conflicting statements what the situation really was as to the part of the road on which the plaintiff was driving. If one of the two roadways had been thrown " open to travel " and the plaintiff was driving on it, he was there by right, and the defendant is liable for its negligence, if it was negligent in operating the stone crusher. On the other hand, if the plaintiff drove on to a roadway between wooden horses which had been placed across the way, and on which were signs stating " No passing through," or even if he drove on to a roadway on which such signs had been placed and which were temporarily standing at the side of the road lengthwise in such a position as plainly to indicate that it was not open for travel, he went at his own risk. The

only exception covering this point is that to the refusal to order a verdict for the defendant. As there was evidence on which the jury, under proper instructions, could have found for the plaintiff, this exception is not well taken.

3. The defendant's third contention is that there was no evidence of negligence on the part of the defendant. But we think it might be found to be an act of negligence to dump a load of stone on the wooden platform of a stone crusher and let off steam just as a horse which is being driven along a roadway only twenty-five feet away is opposite to it, and which is "in plain sight of the men who dumped the stone." The case does not come within the cases relied on by the defendant, *Howard v. Union Freight Railroad,* 156 Mass. 159, *Lamb v. Old Colony Railroad,* 140 Mass. 79, where horses have been frightened by the escape of steam incident to the prudent running of its trains by a steam railroad which has been given the right to operate its road adjoining a highway.

In accordance with the terms of the report, there must be

*Judgment for the plaintiff.*