HERBERT BOWDEN *vs.* CITY OF ROCKLAND.

Knox.    Opinion January 14, 1902.

*Way.    Towns.    Negligence.    Municipal Officers.    R. S., c. 18, § 61.*

1.  It is within the statutory duty and power of a street or road commissioner to re-build upon a larger scale a retaining wall for a public street, when the larger wall is necessary to make the street safe and convenient, and when the municipality has provided the land and the funds therefor.

2.  In re-building such retaining wall the street or road commissioner acts as a public officer and not as an agent of the municipality, unless it is made to appear that the municipality assumed itself the direction of the work and of the commissioner.

3.  Unless it is shown that the municipality has assumed the direction of the work and of the commissioner, it is not liable to third parties, including employees, for any negligence of the commissioner in the prosecution of the work.

4.  That the mayor and members of the committee on streets of the city council advised the street commissioner of the city, that it was within his statutory power and duty to re-build on a larger scale a retaining wall which had given way, and urged him to do so with the assurance that "it would be all right," does not show that the city assumed control of the work and of the commissioner.

5.  That the city engineer made plans and specifications for re-building a retaining wall upon a larger scale and delivered them to the street commissioner who proceeded to re-build the wall according to such plans and specifications, does not make the city responsible for the negligence of the commissioner in carrying on the work thus planned.

6.  Where the street commissioner in re-building a retaining wall under the above circumstances set up a derrick so negligently that by reason of such negligence a laborer on the work was injured, the municipality is not responsible.

On report.    Plaintiff nonsuit.

Action on the case against the city of Rockland to recover damages for injuries, which the plaintiff claims he received while he was at work on a derrick, within the city limits and employed under the road commissioner in repairing the highway.    The facts will be found in the opinion.

*C. E. and A. S. Littlefield,* for plaintiff.

Counsel argued: That the work being done was outside the limits of the street and therefore outside of the jurisdiction of the road commissioner, as a public officer; that the work was being done by the road commissioner, upon the order of the mayor and the committee on streets; that all of the committee either gave instructions or ratified the instructions given prior to the actual beginning of the work at the place where the wall was located. In any event prior to the injury to this plaintiff; that these instructions to the road commissioner were by the duly constituted authorities of the city; that the work was done upon private property and the materials therefor taken from said property under a consent from the owners, giving the city permission to do so; that the wall was built outside the limits of the street and under the regularly constituted city authorities for the financial benefit and advantage of the city in performing its duty of keeping the street in repair; that no specific vote was passed by the city council instructing the road commissioner to do the work according to the plans, with the material and at the place provided by the city. If the defendant city can escape liability, it must be for no other reason except that the city council failed to pass such positive vote.

Towns and cities liable when individuals would be. *Peck* v. *Ellsworth,* 36 Maine, 393; *Eastman* v. *Meredith,* 36 N. H. 284, 72 Am. Dec. 302; *Pratt* v. *Weymouth,* 147 Mass. 245, 9 Am. St. Rep. 691. This was a ministerial act and therefore one for which the city was responsible, if the city was the party performing the work. *The Rochester White Lead Co.* v. *The City of Rochester,* 3 N. Y. 463, 53 Am. Dec. 316; *Stone* v. *Augusta,* 46 Maine, 127; 2 Dillon Mun. Corp. 3rd ed. p. 1075, note. The road commissioner, so far as that particular work was concerned, was the agent of the city. If it does not appear in what capacity an officer performs a service, "the law will regard him as acting in the capacity in which he lawfully might perform the duty." *Jones* v. *Jones,* 18 Maine, 308, 36 Am. Dec. 723; *New Portland* v. *Kingfield,* 55 Maine, 172; *Treat* v. *Orono,* 26 Maine, 217. The road commissioner, under the charter and ordinances of the city of Rockland, is primarily agent of

the city.    If he is acting upon his own authority and under the general statutes as a highway surveyor, he is then his own master.    He is independent of the city or the city council.    If he is not so acting his acts which are properly done must be done by virtue of his authority as agent of the city.    The portions of the Rockland charter to judge from the opinion in the case of *Waldron* v. *Haverhill*, 143 Mass. 582, are very much like the portions of the charter of the city of Haverhill in relation to the acts of the road commissioner.    In that case it was held that the road commissioner or as it is termed "superintendent of highways" was the agent of the city.    The road commissioner of the city of Rockland is "under the direction and subject to the approval of the city council or such committee as they may appoint," and only a very small part of his authority is a delegation of a portion of the sovereign power."    His position is principally an employment and not an office.    *Walcott* v. *Swampscott*, supra; *Woodcock* v. *Calais*, 66 Maine, 235.    Dillon in his work on Municipal Corporations under the head of respondeat superior, 3rd edition, page 977, says:   "It may be observed, in the next place, that when it is sought to render a municipal corporation liable for the act of servants or agents, a cardinal inquiry is, whether they are the servants or agents of the corporation.   If the corporation appoints or elects them, and can control them in the discharge of their duties, can continue or remove them, can hold them responsible for the manner in which they discharge their trust; and if those duties relate to the exercise of corporate powers, and are for the peculiar benefit of the corporation in its local or special interest, they may justly be regarded as its agents or servants, and the maxim of respondeat superior applies."    *Woodcock* v. *Calais*, supra; *Pratt* v. *Weymouth*, 147 Mass. 245, 9 Am. St. Rep. 691; *Tindley* v. *Salem*, 137 Mass. 171, 50 Am. Rep. 289; *Inman* v. *Tripp*, 11 R. I. 520, 23 Am. Rep. 520 ; *City of Dayton* v. *Pease*, 4 Ohio State, 97.    No direct vote of the city council necessary.    *Hanson* v. *Dexter*, 36 Maine, 516; *Boothby* v. *Troy*, 48 Maine, 560, 77 Am. Dec. 244; *Sullivan* v. *Holyoke*, 135 Mass. 273; *Waldron* v. *Haverhill*, 143 Mass. 582.

*C. M. Walker*, for defendant.

The two phases of character represented by the decisions, and the

peculiar liabilities in reference to the different capacities of officers, whether as agents of the town, or public officers, are fully recognized and established in this and other States.  As to the first may be noted, *Anthony* v. *Adams*, 1 Met. 284; *Seele* v. *Deering*, 79 Maine, 343, 1 Am. St. Rep. 314; *Hawks* v. *Charlemont*, 107 Mass. 414; *Deane* v. *Randolph*, 132 Mass. 475; *Waldron* v. *Haverhill*, 143 Mass. 582; *Doherty* v. *Braintree*, 148 Mass. 495.  As to the second, *Small* v. *Danville*, 51 Maine, 359; *Mitchell* v. *Rockland*, 52 Maine, 118; *Cobb* v. *Portland*, 55 Maine, 381, 92 Am. Dec. 598; *Woodcock* v. *Calais*, 66 Maine, 234; *Farrington* v. *Anson*, 77 Maine, 406; *Bulger* v. *Eden*, 82 Maine, 352, 9 L. R. A. 205; *Goddard* v. *Harpswell*, 84 Maine, 499, 30 Am. St. Rep. 373, and many other cases.  *Small* v. *Danville*, 51 Maine, 359; *Mitchell* v. *Rockland*, 41 Maine, 363, 66 Am. Dec. 252.  Street commissioners, when making, repairing, or otherwise performing their official duties upon highways and streets, are in the performance of their public duties, beyond the control of the corporation; and hence third persons injured thereby, cannot invoke against the corporation.  *Pratt* v. *Weymouth*, 147 Mass. 254; *Bulger* v. *Eden*, supra; *Bryant* v. *Westbrook*, 86 Maine, 450.  On the other hand, in the latter case in the same State, *Prince* v. *Lynn*, 149 Mass. 193, 14 Am. St. Rep. 404; *Hennessey* v. *New Bedford*, 153 Mass. 260.  In the 86 Maine, 539 and 540, *Gilpatrick* v. *Biddeford*, a case similar to the one at bar, the court says:—
"The ordinance of the city of Biddeford making it the duty of the street commissioner to superintend the building and repair of sewers and make contracts therefor, and also placing that officer under the "supervision of the committee on streets and sewers," obviously was not designed as an attempt to usurp the powers vested in the mayor and aldermen by the general statute."

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

EMERY, J.  Where a public highway in Rockland passed along the brink of a deep lime-rock quarry it had been supported on the quarry side by a retaining wall.  This wall proved insufficient and

collapsed, and it became necessary to re-build with a new and thicker wall at that place to make the highway safe and convenient within the statute. To do this, required the wall to be built partly at least upon land outside of the located limits of the highway upon that side. The owners of the land, the quarry, sent to the city council a written license to build and maintain such a wall on this land and to take the materials therefor from the quarry. The street railway company using that highway also stipulated in writing with the city council to bear part of the expense. The city engineer made a plan for what he deemed would be a sufficient wall to make the highway safe and convenient and gave to the street commissioner. This latter officer thereupon undertook the work of building the wall according to the plan, and partly, at least, upon the land of the quarry owners, and with material from the quarry. He procured men and teams and the necessary tools and appliances. Among other appliances he hired a derrick (not owned by the city) and caused it to be set up under his supervision to facilitate the work. This derrick was set up in such a way that, in operating it, the boom slipped from the mast and injured the plaintiff, who was at the time employed in the same work by the street commissioner.

The plaintiff claims that the boom slipped and his injury resulted from the negligence of the street commissioner in setting up the derrick. He further claims that in setting up the derrick the street commissioner was the agent of the city, and was not then acting as a public officer in the performance of official duty.

The re-building the retaining wall on a larger scale than the old, that being necessary to make the way safe and convenient, was clearly within the statutory powers and duties of the street commissioner, at least after the city had provided funds and a place therefor. He was expressly directed by statute R. S., c. 18, § 18, to cause sudden injury to ways and bridges to be repaired without delay. By section 11 of the charter of Rockland the street commissioner has "charge of all the work and expenditures upon the streets." No ordinances of the city can limit these statutory powers and duties. It is well settled, by decisions too numerous and familiar to require citation, that a highway surveyor or street commissioner in repairing ways is, and

acts as, a public officer; and the municipality, within whose limits he acts and which appointed him and furnished him funds for the work, is not liable for his torts, unless it has interfered and itself assumed control and direction of the work, and of the surveyor or commissioner. Has the city thus interfered and assumed control and direction in this case is the pivotal question.

While some persons, probably city officers, in behalf of the city procured the written license of the quarry owners for the use of their land and material, and also a stipulation from the street railway company to bear part of the expense of re-building the wall, it does not appear that the city council ever passed any vote in the matter, or that its committee on streets ever had any meeting or as a committee gave any instructions in the matter. No directions appear to have been given by vote of the city council, or the committee on streets, to the city engineer to prepare plans. So far as appears he did so suo motu as part of his regular work, or at the request of some officers. The plaintiff, however, claims that the mayor and one or more of the committee on streets gave the street commissioner orders to build the wall, and that he acted under those orders, and not under his statutory authority. We do not think the plaintiff's own evidence shows so much. There appears to have been some question in the mind of the street commissioner as to his authority to re-build the wall as street commissioner, in view of all the circumstances. He consulted the mayor, the city solicitor and members of the committee on streets, and they assured him he had authority as street commissioner and told him to go ahead and build the wall. He then proceeded with the work as above described.

It must be apparent that this is not enough to show that the city assumed the control and direction of the work and of the commissioner, reducing him from a public officer to a mere employee of the city. It must be apparent that such evidence does not bring this case within the principle of *Woodcock* v. *Calais*, 66 Maine, 234, and kindred cases, where the town in town meeting, or the city in meeting of city council, specifically voted to assume charge of the work and to direct what should be done and who should do it; nor within the case of *Waldron* v. *Haverhill*, 143 Mass. 582, where the city

council had purchased and set up a rock-crusher on its own land and directed the street commissioner to use it in crushing stone for the streets, and the dust therefrom injured the plaintiff's premises; nor within the case *Butman* v. *Newton*, 179 Mass. 1. At the most, the various officials with whom he talked merely assured the commissioner he had the authority and duty to re-build the wall, and told him to go ahead and exert his authority and do his duty, "and it would be all right". This case is more within *Barney* v. *Lowell*, 98 Mass. 570, and *Prince* v. *Lynn*, 149 Mass. 193, in which cases the city was held not liable for the negligence of the street commissioner, though he was acting under the city charter.

That the city obtained the license from the quarry owners to use their land and materials was not a usurpation of the street commissioner's authority, and did not oust him from the control and direction of the work of re-building, no more than if the city had condemned the land and material. The arrangement for the street railroad company to bear part of the expenses had no effect upon the status of the street commissioner, no more than an arrangement to raise the money by loan or tax. That the plan for the wall was made by a city employee, the city engineer, did not make the city the owner or director of the work. The builder is not ipso facto the agent of the architect. There is no suggestion that anything in the plan hindered the commissioner in choosing and properly setting up proper appliances.

We do not say that if the mayor, city solicitor, or members of the committee on the streets, or all combined, acting of their own volition without a vote of the council, had specifically assumed control and direction of the work, and of the commissioner, such acts of their's would have made the commissioner a mere agent of the city, and the city his principal, answerable for his torts. It was said in *Woodcock* v. *Calais*, 66 Maine, 234, on page 236 citing *Haskell* v. *New Bedford*, 108 Mass. 208, that the orders which the street commissioner may have received from the mayor or city solicitor could not affect his relative status to the city and could not bind the city in respect to the commissioner's acts. In *Goddard* v. *Harpswell*, 88 Maine, 228, it was held that the selectmen without vote of the town

authorizing it, could not make themselves agents of the town in the matter of highways.

In this case it is enough to say, that the evidence does not show that the city through the action of any legally constituted authority had so far assumed the control and direction of the work of re-building the wall, and of the street commissioner, as to make his negligence in setting up the derrick the negligence of the city.

*Plaintiff nonsuit.*