## SYLVANUS SMITH *vs.* CITY OF GLOUCESTER.

Essex.   January 6, 1909. — March 1, 1909.   ,

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Municipal Corporations.   Public Officer.   Easement,* By prescription.   *Sewers.*

Superintendents of highways, elected under a city charter providing for the election of such officers to perform the duties of surveyors of highways, where no provision by ordinance has been made to the contrary, are in legal contemplation surveyors of highways.

If a superintendent of highways of a city, having the powers of a surveyor of highways, without authority lays a line of pipe from a catch basin in a street through a ditch crossing private land, and thus causes injury by flooding the cellar of a house on the land, he has committed a tort and is liable personally to the landowner for the injury thus caused, but the city is not liable.

If a superintendent of highways of a city, who in legal contemplation is a surveyor of highways, causes injury to land abutting on a street of the city by his negligence in not keeping free from obstructions a ditch into which a line of pipe leads from a catch basin, and thus flooding the cellar of a house on private land through which the ditch passes, the city is not liable.

If a superintendent of highways of a city, who in legal contemplation is a surveyor of highways, without authority constructs a catch basin in a street of the city and lays a line of pipe from it connecting with a ditch which crosses private land, and if the city never takes any action with respect to the catch basin, the pipe line or the ditch, but for more than twenty years water runs from the catch basin through the pipe into the ditch, this may subject the land to an easement, but, if so, the easement is in the public and not in the city, and does not make the city liable for injury to the private land through which the ditch passes caused by the unlawful construction of the catch basin and pipe line or by negligence in failing to keep the ditch clear from obstructions.

Discussion by LORING, J., of the character of "main drains or common sewers" provided for in R. L. c. 49, § 1.

If a superintendent of highways of a city, who in legal contemplation is a surveyor of highways, without authority constructs a catch basin in a street of the city and lays a line of pipe from it connecting with a ditch which crosses private land, and if the city never takes any action with respect to the catch basin, the pipe line or the ditch, and, although for more than twenty years water runs from the catch basin through the pipe into the ditch, no drain or sewer pipe of any kind ever has discharged into the ditch, and the ditch, which originally was a natural watercourse, never has discharged into a city sewer or drain, any easement, which the public may have acquired to have water run through the ditch, is confined to such use, and the ditch cannot be found to have become a main drain or common sewer within the meaning of R. L. c. 49, § 1.

LORING, J.   This case was heard by a judge of the Superior Court without a jury.   He found for the plaintiff and reported

the case to this court for its determination.  By the terms of the report judgment is to be entered on the finding " if the finding for the plaintiff is justified on the facts reported," and if certain rulings and refusals to rule were correct; otherwise, judgment is to be entered for the defendant.

We understand the facts to be as follows : The plaintiff before 1874 and since then has been the owner of a lot of land lying to the west of and abutting on Mount Vernon Street in the defendant city.  Mount Vernon Street runs north and south and slopes toward the south.  From what is stated further on it would seem that the land on both sides of Mount Vernon Street slopes toward the west as well as toward the south.

A natural watercourse originally flowed west through the plaintiff's lot of land, close by its northerly boundary.  This watercourse " had its origin in and drained territory to the east of the plaintiff's premises."  That means that it had its origin in land lying east of Mount Vernon Street and drained that land, and presumably the land now within the limits of that street.

At some time before 1874 this natural watercourse within the limits of the plaintiff's land was walled in on each side and was connected " with the stone culvert under " Mount Vernon Street, through which the watercourse flowed from the place of its origin east of Mount Vernon Street.  " By whom these walls were built and when built did not appear, except the walls and the culvert were in existence prior to 1874."  For convenience we shall hereafter speak of what had been this natural watercourse as the " ditch."  It had become in fact a ditch in 1886 (as we shall see later on), if not in 1874, and is spoken of as a ditch in the report.

In 1874 " the superintendent of highways of the defendant city " built a catch basin in Mount Vernon Street, " distant about thirty feet northerly from the northeast corner of the plaintiff's land," and connected this catch basin with the ditch by " a line of pipe laid in the street," and then (for a short space) through the southeast corner of private land lying next north of the northerly line of the plaintiff's lot and through the northeast corner of the plaintiff's land.  This " line of pipe " entered the ditch at the northeast corner of the plaintiff's lot.

The culvert under Mount Vernon Street which originally con-
ducted under that street the waters of the natural watercourse
was filled up in 1886 or 1887 by a private water supply company
in laying its pipes; " and since this filling no water from the
territory to the east of this street has reached the ditch or drain
by its previously existing channel."

In 1876 or 1877 " the defendant's superintendent of highways,"
at the plaintiff's request, covered the top of the ditch with flag-
stones for a distance of some seventy feet from Mount Vernon
Street, in connection with a driveway which the plaintiff then
built from Mount Vernon Street along the southerly edge of the
ditch to his stable.

In 1878 or 1879 the plaintiff moved this stable to the north-
east corner of his land and made it into a dwelling house.   This
house was placed just south of the ditch.   The foundations of
the northerly side of the house were placed " upon " the south-
erly edge of the stone wall forming the southerly side of the
ditch.

"Employees of the highway department of the defendant city,
on several occasions since 1874, have cleared out or partially
cleared out the ditch or drain, at the request of the plaintiff, one
occasion in 1894 being in consequence of a break in the water
pipe in this street which flooded the plaintiff's house and filled
the ditch.   During two unusually heavy rainstorms, one in 1903
and the other in 1904, surface water collecting in this street
flowed into this catch basin and thence into the ditch in large
quantities and by reason of the prior accumulations in the ditch
of sand and other surface wash of the streets, due to the failure
to properly clear out the ditch, and also by reason of the gravel
and other material brought in there during these storms, the
water was caused by percolation to enter the basement of the
plaintiff's house and also to overflow the ditch into the yard
and to enter the said basement. . . . It is for the water that
entered the basement because of the condition of the ditch that
damages are claimed."

The finding of the judge is in these words : " I find that the
plaintiff is entitled to recover for the damages done by the water
entering the basement caused by the accumulation of sand, mud
and other materials in the ditch."

This is in effect a finding that the cause of the injury to the plaintiff was "the accumulation of sand, mud and other materials in the ditch." Did these facts warrant a finding that the defendant city is liable for that?

The plaintiff's contention is that by the use which had been made of this ditch since 1874, when "the superintendent of highways of the defendant city" laid a pipe from the catch basin into it, the city has gained a prescriptive right in the ditch and therefore is liable for the accumulation of sand and mud therein.

The catch basin and pipe in question were not laid by the city, but by the defendant's superintendent of highways. "The superintendent of highways of the defendant city" is in law the surveyor of highways for the defendant city.

By the charter of the defendant city it is provided that the city council shall annually elect (*inter alios*) "one or more superintendents of highways." St. 1873, c. 246, § 13. The ordinances of the defendant city are not set forth in the report, but it is there found as a fact that "no change has been made in its provisions which require the city council to elect annually a superintendent of highways, who exercises the same powers and performs the same duties as a surveyor of highways." If it were necessary, this should be taken to be a finding that an ordinance of the defendant city so provides. But that is not necessary. For where no provision to the contrary has been made by ordinance, superintendents of highways elected under such a charter are "part of the organization which as a whole takes the place of a surveyor of highways," to quote the words of Holmes, J., in *McCann* v. *Waltham*, 163 Mass. 344, 345. It has been uniformly held that officers elected under the provisions of city charters to perform the duties of surveyors of highways, whatever may be their designation, bear the same relation to the city electing them that the surveyor of highways bears to the town electing him. In other words they are in legal contemplation surveyors of highways. *Barney* v. *Lowell*, 98 Mass. 570. *Prince* v. *Lynn*, 149 Mass. 193. *Hennessey* v. *New Bedford*, 153 Mass. 260. *McCann* v. *Waltham*, 163 Mass. 344. *Jensen* v. *Waltham*, 166 Mass. 344. *Taggart* v. *Fall River*, 170 Mass. 325.

*Butman* v. *Newton*, 179 Mass. 1, and *Waldron* v. *Haverhill*, 143

Mass. 582, are not decisions to the contrary. These are cases where, applying this rule, it was decided that the ordinances of the defendant cities had taken certain work out of the hands of the officers elected to perform the duties of the highway surveyor and had committed it to other persons as agents of the city. In *Butman* v. *Newton,* for example, the ordinance put the work in the charge of a committee of the council under the " supervision " only of the superintendent of highways, in place of leaving the work in charge of the superintendent subject to direction of the aldermen, as was the case in *Prince* v. *Lynn,* 149 Mass. 193, and *Pratt* v. *Weymouth,* 147 Mass. 245. See in this connection *McCann* v. *Waltham,* 163 Mass. 344, 345, 346.

When the " superintendent of highways of the defendant city " laid " a line of pipe " from the catch basin through the plaintiff's land and private land lying north of the plaintiff's land so that water collecting in the catch basin flowed into the ditch, he committed a tort for which he was liable. There is no pretence that a right to lay this line of pipe from the catch basin through private land north of the plaintiff's land and through the plaintiff's land, and to connect it with the ditch, was included in the lay out of Mount Vernon Street. Under the circumstances the lay out of Mount Vernon Street gave no right to lay this line of pipe. *Anthony* v. *Adams,* 1 Met. 284. *Franklin* v. *Fisk,* 13 Allen, 211. For laying this line of pipes " the superintendent of highways of the defendant city," who laid the pipes, was personally liable. *Elder* v. *Bemis,* 2 Met. 599. *Moynihan* v. *Todd,* 188 Mass. 301. *Barry* v. *Smith,* 191 Mass. 78. But the act of laying these pipes was not the act of the defendant city. *Manners* v. *Haverhill,* 135 Mass. 165. *Johnson* v. *Somerville,* 195 Mass. 370.

We assume in favor of the plaintiff that the subsequent use of this ditch by the public for over twenty years could have been found to have created a prescriptive right to use the ditch as it was used during the period in which it was used.

In our opinion the evidence did not warrant a finding in favor of the plaintiff. If the damage suffered by the plaintiff was caused by the negligence of the " superintendent of highways of the defendant city " in not keeping this ditch free from obstructions, the defendant is not liable. The negligence of " the

superintendent of highways of the defendant city," who was in legal contemplation a surveyor of highways, is not in law the negligence of the defendant city. The general doctrine is too well settled to require discussion. The cases are collected in *Hill* v. *Boston,* 122 Mass. 344 ; *Moynihan* v. *Todd,* 188 Mass. 301 ; *Johnson* v. *Somerville,* 195 Mass. 370. The general doctrine was applied to a case like the one now under consideration in *Kennison* v. *Beverly,* 146 Mass. 467. In that case the plaintiff was injured by water flowing from a leaky catch basin in a highway. It was held that the catch basin was in the custody of the highway surveyor, and for his negligence the defendant town was not liable. See in this connection *Bates* v. *Westborough,* 151 Mass. 174; *Collins* v. *Waltham,* 151 Mass. 196, 198.

The evidence did not warrant a finding that the defendant city had made this drain its drain, so that it was maintained by it at the time here in question.

The evidence did not warrant a finding that the catch basin, the pipe line and the easement in the ditch here in question ever had been adopted by the city, either as a main drain under what is now R. L. c. 49, § 1, or otherwise.

There is no evidence that the city ever took any action with respect to the catch basin, the pipe line or the ditch. The catch basin was built and the pipe line laid and connected with the ditch by " the superintendent of highways of the defendant city," who was in legal contemplation a surveyor of highways. The act of the " superintendent of highways of the defendant city " is not in law the act of the defendant city, as we have already said. *Manners* v. *Haverhill,* 135 Mass. 165. *Johnson* v. *Somerville,* 195 Mass. 370. Since 1874, when the catch basin was built and connected with the ditch, the city has taken no action in the matter. The fact that water has run from the catch basin through the pipe into the ditch for over twenty years may have subjected the land in question to an easement. The use so made was made by the public, not by the city. Such a use does not create any liability on the part of the defendant city.

To come to the cases relied on by the plaintiff. *Brayton* v. *Fall River,* 113 Mass. 218, and *Nevins* v. *Fitchburg,* 174 Mass. 545, had to do with sewers laid out as such under what is now R. L. c. 49, § 1. Great reliance has been placed by the plain-

tiff upon the case of *Bates* v. *Westborough*, 151 Mass. 174. That case had to do with a system of drains which were held to have become main drains within what is now R. L. c. 49, § 1. Why that system of drains was held to have become main drains within what is now R. L. c. 49, § 1, (when it seemed that the system of drains never had been laid out under what is now R. L. c. 49, § 1, as to which see *Lemon* v. *Newton*, 134 Mass. 476,) was not discussed in that case. It will be enough for the present case to say that it was not by prescription, and that the drain here in question could not be held to be a main drain within what is now R. L. c. 49, § 1. This we will discuss later on. The first point decided in *Bates* v. *Westborough* was that a drain not used for sewage and used only for draining swampy land and for taking care of the surface water of streets could be a main drain within what is now R. L. c. 49, § 1. Although that conclusion seems to be a strange one to-day, it is not so if the history of the acts as to main drains or common sewers is considered. " Main drains or common shores," as they were called until the modern word " sewers " was substituted in the Revised Statutes, (Rev. Sts. c. 27, § 3,) were the subject of private enterprise up to the year 1841. Prov. St. 1709–10, c. 5; 1 Prov. Laws, (State ed.) 643. Prov. St. 1753–54, c. 43; 3 Prov. Laws, (State ed.) 738. Prov. St. 1762–63, c. 27; 4 Prov. Laws, (State ed.) 620. St. 1796, c. 47. Rev. Sts. c. 27, § 2. *Boston* v. *Shaw*, 1 Met. 130, 135. *Lemon* v. *Newton*, 134 Mass. 476, 478. In the year 1841 authority was given for the first time to public officers to lay out, construct and maintain " main drains or common sewers." St. 1841, c. 115. The act doubtless was caused by the decision made in the case of *Boston* v. *Shaw*, 1 Met. 130. The purpose for which these main drains or common sewers were constructed and maintained while they were the subject of private enterprise was, in the words of the first statute, " for the draining of cellars." Prov. St. 1709–10, c. 5, § 2; 1 Prov. Laws, (State ed.) 643. And the persons who were bound to contribute to the maintenance of " main drains or common shores " were " every person that shall afterwards enter his or her particular drain into such common shore, or main drain, or by any more remote means receive benefit thereby, for the draining of their cellars or lands." Prov. St. 1709–10, c. 5, § 3. The same provision is

found in the subsequent acts, while the construction and maintenance of main drains or common sewers was a subject of private enterprise. St. 1796, c. 47, § 2. Rev. Sts. c. 27, § 3. This was carried forward into and retained by the statutes providing for the laying out, construction and maintenance of main drains or common sewers by public authorities. St. 1841, c. 115, § 3. Gen. Sts. c. 48, § 4. Pub. Sts. c. 50, § 4. R. L. c. 49, § 3. The words "for the draining of their cellars or lands" were kept unchanged until the enactment of the Revised Laws. In the Revised Laws these words were changed to "for draining his land or buildings." R. L. c. 49, § 3. The change presumably was made in order to make the terms of the statute conform to the use in fact made of "main drains or common sewers." The reason for the terms of the original acts doubtless was that until modern water works were established, "main drains or common sewers" were in fact used to drain lands and cellars which otherwise would have been wet, and not to carry off sewage in the modern acceptation of that word, while since the establishment of modern water works "main drains or common sewers" have in fact been used principally to carry off sewage; and the change to "land and buildings" presumably was made (as we have said) in order to make the terms of the statute conform to the use in fact made of "main drains or common sewers." It is apparent from this review of the statutes that there was nothing strange in deciding, as the court decided in *Bates* v. *Westborough*, that a box drain not used to carry off sewage may be a main drain within Pub. Sts. c. 50, § 1, now R. L. c. 49, § 1. That this was the decision of the court in that case is recognized by the court in the way in which *Bates* v. *Westborough* is referred to in *Melrose* v. *Hiland*, 163 Mass. 303, 309.

The ditch in the case at bar could not have been found to have become a main drain or common sewer and so a drain for which the defendant city was liable as a commercial enterprise. The report states that "the evidence did not show that any drain regularly laid out, built, or maintained by the defendant, or that any drain or sewer pipe connecting with any land or buildings owned or controlled by the defendant, ever discharged into this ditch or drain." There is no statement in the report that any drain or sewer pipe from any other building connected

with the ditch. And there is no pretense that the ditch which was originally a natural watercourse has ever discharged into a city sewer or drain. The right gained by prescription is limited to the use which brought the prescriptive right into existence. See *Baldwin* v. *Boston & Maine Railroad*, 181 Mass. 166, where the earlier cases are collected. In the case at bar the use of the ditch here in question was limited to carrying off surface water collected in one particular catch basin, in a public way within the limits of the defendant city. A prescriptive right created by such a use, begun by the surveyor of highways and continued without any act on the part of the defendant city, in our opinion does not make that city liable for it.

The plaintiff also relies on *Emery* v. *Lowell*, 104 Mass. 13. In that case it was held that where " by its superintendent of streets and its servants, it [the defendant city] built a permanent cesspool, like those constructed for draining surface water into main drains and common sewers of the city, opening into the plaintiff's drain, and thus in effect adopting that drain instead of one regularly built by the city," it was liable for it as a main drain or common sewer. The plaintiff's private drain, opened and used by the defendant city in that case, was in fact a private sewer for carrying off sewage. In other words, the " superintendent of streets " in question in *Emery* v. *Lowell* was held to be an agent of the city, as the superintendent of streets was held to be in *Butman* v. *Newton*, 179 Mass. 1, and in *Waldron* v. *Haverhill*, 143 Mass. 582. But " the superintendent of streets of the defendant city " was in legal contemplation a surveyor of highways, as we have already said.

The next case relied on by the plaintiff is *Manning* v. *Lowell*, 130 Mass. 21. In that case it was admitted that the system of drains there in question which collected in artificial channels and threw on to the plaintiff's land water which otherwise would not have come there was maintained by the defendant city. For that reason the question which we have here did not arise there.

The entry must be

*Judgment for the defendant.*

The case was submitted on briefs.

*E. S. Taft*, for the plaintiff.

*L. S. Simonds & J. J. Cunningham*, for the defendant.