LEAD LINED IRON PIPE COMPANY *vs.* INHABITANTS OF WAKEFIELD.

SAME *vs.* SAME.

Middlesex.    March 9, 1916. — April 6, 1916.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Municipal Corporations,* Officers and agents, Superintendent of streets.  *Public Officer.  Evidence,* Relevancy and materiality.

Where a town, which had not authorized the election of road commissioners or a surveyor of highways, voted "That the board of selectmen be instructed to employ a competent engineer, who shall be a practical road builder, as superintendent of streets," such vote has merely an advisory, and no mandatory effect.

Under R. L. c. 25, § 86, a superintendent of streets, appointed by the selectmen of a town which has not authorized the election of road commissioners or a surveyor of highways, although he acts "under the direction of the selectmen," has the powers, performs the duties and is subject to the liabilities and penalties of surveyor of highways and road commissioners, and therefore he is a public officer and is not an agent of the town.

On a review of the evidence at the trial of an action of tort by a landowner against a town for injuries caused by the flooding of the plaintiff's land caused by the overflowing, at the time of an unusual rainstorm, of a natural watercourse into which the town had caused surface drainage from streets to be emptied, it was *held* that the evidence was clear and convincing that the overflowing was caused by the clogging of a culvert by the falling of a capstone, that there was no evidence to show how long the capstone had been dislodged or that the culvert when unobstructed was not adequate in form and dimension to provide for the full flowage of the stream; and that, if there were any negligence in not discovering that the capstone had fallen into the culvert or in failing to recover it, it was negligence of the superintendent of streets, who under R. L. c. 25, § 86, was a public officer for whose negligence the town was not liable.

Evidence that the superintendent of streets worked under the direction of the selectmen was *held* not to be relevant or material in such an action.

PIERCE, J. These are two actions of tort, depending upon the same state of facts, to recover for the flooding of the plaintiff's premises with water.

The material facts, as they appear in the bill of exceptions, are as follows: A natural watercourse traverses and drains the plaintiff's premises. It has its source in a spring on private land, flows in an easterly direction, runs along the northerly boundary of the plaintiff's premises; thence through a culvert under North Avenue, a public way; thence through land bought by the defendant March 11, 1913, for school purposes; thence under Main Street, a public way; thence through an open walled ditch to Richardson Avenue, a public way; thence along land of a branch of the Boston and Maine Railroad through an open concrete ditch, through an upright wooden grating into a closed culvert; thence through private land to the Saugus River.

The town, from time to time, established surface drainage in the various streets, all within the watershed of the brook, and emptied the surface drainage into the brook through pipes and otherwise, both above and below the plaintiff's premises. The town appropriated the money for this purpose and the superintendent of streets did the work under the instruction of the selectmen. The town did not authorize the election in 1912, 1913 and 1914 of road commissioners, or surveyor of highways, but voted in March, 1912, "That the Board of Selectmen be instructed to employ a competent engineer who shall be a practical road builder, as Superintendent of Streets." The selectmen appointed a superintendent of streets in June, 1912. There was a superintendent of streets appointed by the selectmen in the years that followed,

though there was no evidence of any subsequent vote of the town in reference thereto.

The plaintiff contends, that the superintendent in the defendant town was an agent of the town and not a public officer, because of the vote of the town above quoted. The answer to this argument is that the selectmen are required, in default of town action, to appoint a superintendent of streets by R. L. c. 25, § 85, who shall have the powers, perform the duties and be subject to the liabilities and penalties of surveyors of highways. *Prince* v. *Lynn,* 149 Mass. 193. The vote of the town if more than advisory was void. That a surveyor of highways is a public officer and not a town agent requires no citation of authority.

A former superintendent of streets had cleaned out parts of the brook in years previous to 1912, under instructions from the board of selectmen, but nothing had been done to the brook since that time by the present superintendent of streets, except to clean out the culvert under Main Street. The brook was not a main drain within the meaning of Pub. Sts. c. 50, §§ 1 to 19, and amendments in addition thereto. *Smith.* v. *Gloucester,* 201 Mass. 329.

On March 2, 1914, after two days of severe wind and rain, surface water overflowed the gutters and filled the streets and cellars of houses along the streets. As a result, the brook and the low land in the vicinity of the brook were flooded; "water came from the brook and flooded the plaintiff's premises to a depth in some places of from fifteen to eighteen inches, and went over the top of North Avenue from the plaintiff's premises on to the Wakefield estate."

On April 16, 1914, there was another flood under almost the same conditions except the storm was not so severe and the plaintiff's property was not so much damaged. Boards, sticks of wood and débris were carried into the North Avenue culvert, became lodged there and prevented the free flow of water.

During the last storm, the superintendent of streets with his men dug into the culvert from the surface of North Avenue, took out the boards, plank and other material which had lodged there and was retarding the flow of water.

The banks of the brook above the culvert are five or six feet wide. The opening to the culvert is four feet wide by two and one

half feet high. When opened, rubbish was disclosed at the "up-stream mouth." A foot below the opening a gas pipe crossed the culvert at right angles to it, with a space of three inches between the top of the pipe and the bottom of the culvert capstone. There was evidence that rubbish was taken out between the inlet and the gas pipe. This pipe was laid and owned by the defendant, which owns a gas plant and furnishes gas for profit. Fifteen feet below the place where the gas pipe crossed the culvert, and further down stream, rubbish had collected against a dislodged capstone of the culvert. The superintendent removed the rubbish at the inlet and between it and the gas pipe without result; he then removed the rubbish collected against the capstone, and the "water went down with a rush." There is no evidence that the gas pipe had any appreciable effect in damming the waters, and the evidence is clear and convincing that the fallen capstone did, in combination with the floating boards and other débris, have that result.

There is nothing in the record to indicate the length of time the capstone had been dislodged, or to rebut the inference that it may have fallen during, and because of, the unusual rainstorm. There is also no evidence that the culvert, when unobstructed, was not adequate in form and dimension to provide for the full flowage of the stream.

Upon the reported facts, if there was any negligence in not discovering that the capstone had fallen into the culvert, or in failing to remove it, or in not keeping the waters reasonably free of floating boards, sticks or wood and other rubbish, it was that of the superintendent of streets in his individual capacity and not as agent of the town. *Murphy* v. *Needham*, 176 Mass. 422. *Johnson* v. *Somerville*, 195 Mass. 370, 382. *Smith* v. *Gloucester*, 201 Mass. 329. *Dupuis* v. *Fall River*, ante, 73.

The plaintiff was not prejudiced by the refusal to permit him to show that all the work of the superintendent of streets was under the direction of the selectmen. The mere fact that the selectmen may give such general directions as shall cause the money entrusted to the superintendent to be judiciously expended, does not make the town liable for his acts or defaults while performing or failing to perform the acts required of him by law. *Butman* v. *Newton*, 179 Mass. 1. R. L. c. 25, § 86, requires that he shall act "under the direction of the selectmen."

The ruling of the presiding judge * was right and the exceptions of the plaintiff thereto must be overruled.

*So ordered.*

J. J. *Butler*, for the plaintiff.

M. E. S. *Clemons*, for the defendant.

---

* *Brown*, J., who ordered a verdict for the defendant.