STILLMAN F. RYDER & another *vs.* CITY OF TAUNTON.

Bristol. February 8, 1940. — May 29, 1940.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Public Officer. Superintendent of Streets. Municipal Corporations,* Highways, Officers and agents, Liability for tort. *Taunton. Agency,* What constitutes.

The superintendent of streets of the city of Taunton, who was elected by the city council and whose duties were defined by certain council orders directing that he should "perform the duties . . . of a surveyor of highways as provided by statute," was a public officer although he was also given general superintendence of the streets "under the direction and control" of the mayor and council, and the city was not liable for property damage resulting from the collapse of a dam upon which a city highway ran, caused by the negligent manner in which he placed through the dam certain pipes for water seepage.

A finding that a superintendent of streets was acting as an agent of the city and not as a public officer in placing pipes for water seepage through a dam while building a concrete bridge for a public way running upon the dam would not have been warranted by evidence that the construction of the bridge was ordered by a committee of the city council and that in building it he followed a plan submitted by the city engineer as directed by that committee, where it did not appear that the placing of the pipes was a part of that plan.

TORT. Writ in the Superior Court dated January 27, 1934.

The action was tried before *Morton,* J.

*D. A. Foley,* (*J. H. Sullivan* & *I. L. Pollock* with him,)
for the plaintiffs.

*F. E. Smith,* City Solicitor, for the defendant, submitted
a brief.

Cox, J.  This is an action of tort brought by the plain-
tiffs to recover for damages to their cranberry land and
crop, allegedly caused by the negligent manner in which
repairs were made upon a public highway.  Bear Hole
Road, admittedly a public highway, at one place is built
upon, or forms a part of, a dam at the northerly end of
Bear Hole Pond, so called, the outlet of which runs through
the dam.  In 1932 a concrete bridge was installed to replace
the old wooden bridge which had collapsed.  This work
was done by the defendant's superintendent of streets.  At
the same time he installed two lengths of pipe across the
roadway at a point fifteen or twenty feet to the west of the
bridge, one of the purposes of which was to take care of
water seepage.  The jury could have found that these pipe
lengths were so negligently installed that water from the
pond gradually worked around the outer surface of the
pipe so as to wash away the fill, eventually making a chan-
nel through the dam and causing its collapse.  The plain-
tiffs' exception to the allowance of the defendant's motion
for a directed verdict presents the only question.  It is
stipulated that if there is no error, judgment is to be entered
for the defendant; and if there is error, judgment is to be
entered for the plaintiffs in the sum of $10,000 and costs.
The defendant's only contention is that the work was done
by a public officer for whose conduct the defendant is not
responsible.  No question is raised as to a permissible find-
ing of negligence.  The plaintiffs' contention is that the
work was done by agents of the defendant and not by
public officers.

The charter of the defendant (St. 1882, c. 211, § 9)
required the city council to elect annually a superintendent
of streets, and the amendment to the charter (St. 1909,
c. 448, § 19) conferred upon the municipal council created
by that statute this power of election.  Certain orders and
rules of the municipal council were in evidence relative to

the duties of the city engineer and of the superintendent of streets. No question is raised as to the authority of the municipal council to adopt these orders or as to their validity. See St. 1909, c. 448, § 10; *McNeil* v. *Mayor & City Council of Peabody,* 297 Mass. 499, 502–503; G. L. (Ter. Ed.) c. 39, § 1; c. 40, § 21. They provide for the election annually, or whenever a vacancy occurs, of a superintendent of streets; that his compensation shall be determined by the municipal council and that his whole time shall be at the disposal of the city; that he "shall perform the duties, exercise the powers and be subject to the obligations of a surveyor of highways as provided by statute, and shall, under the direction and control of the mayor and municipal council, have the general superintendence of all streets, ways, lanes, sidewalks, bridges, culverts within the street limits, and public squares within the city. He shall cause the same to be kept in repair and safe for public travel at all seasons of the year; shall make all necessary contracts for the supply of labor and materials and shall keep the public streets and other avenues of the city clean and in good condition for public use. He shall notify the mayor, chief of police or board of health of any encroachments, obstructions, or nuisances existing therein; and shall do all other things in relation thereto which the mayor or municipal council may order." One of the standing committees provided for by rule or order was that of streets, bridges and ashes. From the records of this committee it appeared that, prior to any work being done in the construction of the bridge in question, it was voted that the city engineer draw up plans and the superintendent submit cost of labor and materials for the construction of a cement bridge at Bear Hole; that "the question of building a bridge at Bear Hole be taken up with the mayor;" and that the "superintendent proceed with the building of Bear Hole Bridge following the plan submitted by the city engineer."

This is not a case where the plaintiffs seek to recover under the statute for damages resulting from a defect in the public highway, and cases that hold the municipality liable

for such defects, however created, need not be discussed. See *Blessington* v. *Boston*, 153 Mass. 409; *Connelly* v. *Boston*, 206 Mass. 4.

Apart from statutory liability, it is a rule of long standing that municipalities are not liable for the negligence of a public officer, so called, in the performance of some public service in which the municipality has no particular interest, and from which it derives no special benefit or advantage in its corporate capacity but which it is bound to see performed, in pursuance of a duty imposed by law for the general welfare of the inhabitants of the community. Such an officer is not regarded as a servant or agent of the municipality. *Walcott* v. *Swampscott*, 1 Allen, 101. *Bolster* v. *Lawrence*, 225 Mass. 387. *Daddario* v. *Pittsfield*, 301 Mass. 552, 557–558, and cases cited. An exception to this general rule is where a municipality undertakes to make repairs on its ways by its own agents. *Tindley* v. *Salem*, 137 Mass. 171, 172, 173, and cases cited. *Butman* v. *Newton*, 179 Mass. 1, 6.

Section 62 of G. L. (Ter. Ed.) c. 41 defines the duties of a highway surveyor, who, if chosen, shall have the exclusive control of the ordinary repair of public ways in his town without being subject to the authority of the selectmen. Section 63 of said chapter contains a provision for the election of road commissioners in lieu of highway surveyor, and if such commissioners are chosen by § 63, it is provided by § 64 that they shall exclusively have the powers, perform the duties and be subject to the liabilities and penalties of selectmen and surveyors of highways relative to public ways, monuments, guide posts, sidewalks and shade trees. Section 66, first enacted in 1889, provides that, in a town which has not authorized the election of road commissioners or surveyors of highways, the selectmen shall appoint a superintendent of streets. Section 68 provides that a superintendent of streets shall, "under the direction of the selectmen," have full charge of all repairs and labor upon public ways and sidewalks, and, if no other provision is made, of repairs upon sewers and drains; and in relation to such matters he shall have the powers, perform the duties and

be subject to the liabilities and penalties of surveyors of highways and road commissioners. It has been held generally that highway surveyors and road commissioners are public officers and, in the performance of their statutory duties, do not act as agents of a municipality. *Walcott* v. *Swampscott*, 1 Allen, 101. *Clark* v. *Easton*, 146 Mass. 43. *Wood* v. *Concord*, 268 Mass. 185, 190, and cases cited. And in construing the corresponding provisions of said §§ 66 and 68 it was held, in *Sherman* v. *Swansea*, 261 Mass. 407, that a superintendent of streets was likewise a public officer. *Barney* v. *Lowell*, 98 Mass. 570. *Prince* v. *Lynn*, 149 Mass. 193. *Smith* v. *Gloucester*, 201 Mass. 329, 332, and cases cited. *Bradley* v. *Marlborough*, 296 Mass. 253, 259. See *O'Hearn* v. *Adams*, 288 Mass. 185, 191.

The plaintiffs contend, however, that the order in the case at bar defining the duties of the superintendent of streets, together with the other facts, presents at least a question for the jury as to whether he was an agent of the city. If he was, then the defendant could be found liable for his negligent acts. *Deane* v. *Randolph*, 132 Mass. 475. *Doherty* v. *Braintree*, 148 Mass. 495. But we are of opinion that the order of the municipal council, correctly interpreted, imposed upon the superintendent of streets the duty, as a public officer, of installing the pipes in question. Without qualification he is required to perform the duties, exercise the powers and be subject to the obligations of a surveyor of highways as provided by statute, and whatever measure of control over him is reserved to the mayor and municipal council, relating as it does to the general superintendence of avenues of travel and public squares, it is not inconsistent with the plain requirement that he is to perform the duties of a surveyor of highways as provided by statute. Furthermore, it is expressly provided that he shall make all necessary contracts for the supply of labor and materials. The other duties that are imposed upon him by the order are not inconsistent with these statutory duties. A public officer for one purpose may be an agent of the city for another. *Tindley* v. *Salem*, 137 Mass. 171, 173, 174. *Butman* v. *Newton*, 179 Mass. 1, 8–9. *Daddario* v. *Pittsfield*,

301 Mass. 552, 559. See *Pratt* v. *Weymouth*, 147 Mass. 245, 254.

The case at bar is distinguishable from cases like *Hawks* v. *Charlemont*, 107 Mass. 414, *Deane* v. *Randolph*, 132 Mass. 475, and *Waldron* v. *Haverhill*, 143 Mass. 582. As was pointed out in *Smith* v. *Gloucester*, 201 Mass. 329, what in effect happens where public work such as the repair of highways is done by agents is that the municipalities take the work out of the hands of the officers elected or appointed to do it and commit it to others as agents.

Finally, the plaintiffs contend that where, as here, the work of building the bridge was the result of a vote of the committee on streets that the superintendent proceed with the building of the bridge "following the plan submitted by the city engineer," and that where the evidence disclosed that the bridge was built accordingly, it could have been found that the superintendent was not permitted to use his own judgment in exercising such statutory powers as he had, citing *Ryder* v. *Lexington*, 303 Mass. 281, 287. In our opinion, however, the case does not get to that point. It is true that it could be found that the bridge was built by the superintendent in accordance with the plan of the city engineer, who could have been found to be an agent of the defendant. But there is nothing in the case from which it could be found that the installation of pipes was any part of that plan. In fact, the uncontradicted evidence was that it was not. There is no evidence that anyone exercised or attempted to exercise any control whatever over the superintendent in so far as the installation of the pipes is concerned, or that he was not permitted to exercise his own judgment or discretion in performing his own statutory duties and powers in that respect. *Taggart* v. *Fall River*, 170 Mass. 325. *Wood* v. *Concord*, 268 Mass. 185, 190, 191. *Ryder* v. *Lexington*, 303 Mass. 281, 287.

*Exceptions overruled.*