## HARRY W. PINKERTON vs. INHABITANTS OF RANDOLPH & others.

Norfolk.    March 19, 20, 1908. — October 21, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Trespass. Damages. Way. Boundary. Deed. Municipal Corporations. Joint Tortfeasors.*

The owner of land abutting on a private way, who also owns the fee of the land to the centre of the way and maintains trees and shrubbery on the part of the way of which he owns the fee, although his right to maintain them there is subject to the right of the other abutters on the way to have them removed as obstructing their right of passage, is entitled to damages against a trespasser who removes the trees and shrubbery for interference with his qualified right. The trespasser can show in reduction of damages that the right which he invaded was a qualified and not an absolute one, but, if the removal of the trees and shrubs diminished the value of his property, the landowner is entitled to more than nominal damages, and in estimating his damages it is proper to consider whether and to what extent the other abutters would be likely to insist upon their right of way under the circumstances shown.

A boundary line described in a deed as running in a certain direction by a private way includes the fee of the land to the centre of the private way, if it belongs to the grantor, unless the deed by explicit statement or necessary implication requires a different construction, and the fact that the monument at one end of the boundary on the way is stated to be in the line of the way does not require a different construction.

A town is not liable for acts of trespass committed by the persons who are its selectmen and the persons who are its water commissioners in attempting to construct a street and to dig a trench for a water main in a private way which the town had undertaken to lay out as a public street by a vote which was illegal and void.

If the persons who are the selectmen of a town commit acts of trespass on the land of a private person under the supposed authority of a vote of the town which is illegal and void, they are liable to the landowner for the damage caused to his property, and, being joint trespassers, each of them is liable for the whole damage. The same rule is applicable to similar acts committed without authority by the persons who are the water commissioners of a town.

BILL IN EQUITY, filed in the Superior Court on September 14, 1906, against the town of Randolph and against the persons acting as selectmen and the persons acting as water commissioners of that town, to restrain the defendants from entering certain land of the plaintiff on Wales Avenue, a private way in Randolph leading from North Main Street to Cross Street in that town, or from crossing such land of the plaintiff or digging a

trench therein, and for the assessment of damages for acts of trespass alleged to have been committed by the defendants in taking and destroying many trees, shrubs and fences, disturbing the soil and doing other illegal acts, and for an order that the defendants pay to the plaintiff the amount of the damages so assessed.

In the Superior Court the case was referred to Charles F. Perkins, Esquire, as master. He filed a report, to which the defendants filed objections and exceptions founded thereon. The case was heard by *Fox*, J., upon the defendants' exceptions to the master's report. He made a final decree that the defendant town and the defendants constituting the selectmen of the town were jointly liable to the plaintiff in the sum of $414.40, made up of $350 damages and $64.40 for interest from January 1, 1905, to January 25, 1908, and that the plaintiff should recover his taxable costs against these defendants; also that the defendants constituting the board of water commissioners of the town were jointly liable to the plaintiff in the sum of $5 for damages done to the plaintiff's land. The defendants appealed from the decree.

*J. V. Beal*, for the defendants.

*W. W. Hart*, for the plaintiff.

HAMMOND, J. This case is before us upon an appeal taken by the defendants from a final decree overruling their exceptions to the report of the master, and allowing damages against the defendants as found by him. Although one of the purposes of the bill was to obtain an injunction against future trespasses, it now appears from the record that since the bill was filed Wales Avenue has been legally laid out; and hence the only question before us respects the matter of damages suffered by the plaintiff before the filing of the bill, and the extent to which any of the defendants are answerable.

The question whether the master was right in ruling that, for the acts committed by the water commissioners under the vote of the town passed in 1906, directing the commissioners to extend the water main in Wales Avenue to Cross Street and providing for the issue of the notes of the town to the amount of $2,000 to defray the expense, neither the town nor the commissioners were answerable to the plaintiff, is not raised by the

defendants' exceptions; and therefore we do not pass upon that matter.

It appears from the report that at the hearing before the master the defendants contended "that the plaintiff suffered no damage from the destruction of the trees for the reason that they stood within the limits of the private way, and that the plaintiff had no permanent right to maintain them there, as the users of the private way had the right to remove them at any time." The master ruled that the defendants being trespassers this defense was not open to them, and that the plaintiff was entitled to recover damages as though he had a permanent right to maintain the trees in the avenue.

In this the master was wrong. Even if the defendants were trespassers, they were entitled to show, as bearing upon the question of damages, the nature of the plaintiff's right which had been invaded. They could do this, not for the purpose of justifying the trespass, but as throwing light upon what thing the plaintiff had lost and the consequent amount of the loss.

The ruling of the master that the plaintiff owned to the centre of the avenue was correct. There can be no doubt that by the express language of the deed from Upham and another, dated February 22, 1900, conveying to the plaintiff the westerly lot now owned by him, the fee in the northerly half of that part of Wales Avenue adjoining the lot was included in the description; it was a strip of land twenty feet wide and two hundred and thirty-eight feet long, "more or less." The language of the deed conveying to the plaintiff the easterly lot is not however so clear. The first boundary line * runs "westerly by said avenue," and must be construed to be the centre line of the avenue unless the deed by explicit statement or necessary implication requires a different construction; *Peck* v. *Denniston*, 121 Mass. 17, 18; and the fact that the monument at one end of the street boundary is stated to be in the line of the street is not now regarded as necessarily requiring such different construction. Such a case ordinarily presents a contradiction of monu-

---

* The part of the description referred to was as follows: "Beginning at the southeasterly corner of said parcel at a point on the northerly line of said avenue three hundred and fifty-three feet west from said Main Street; thence running westerly by said avenue one hundred and fifty feet."

ments or boundaries, and the general rule must prevail. *Everett* v. *Fall River*, 189 Mass. 513. The present case cannot be distinguished in principle from that case and must stand with it. That case must be regarded also as directly overruling *Sibley* v. *Holden,* 10 Pick. 249. See also *Cold Spring Iron Works* v. *Tolland,* 9 Cush. 492, and *McKenzie* v. *Gleason,* 184 Mass. 452. The deed of the easterly lot, therefore, conveyed to the centre of the avenue.

But even if the plaintiff owned to the centre of the avenue, it is clear from the facts appearing in the report that the abutters thereon had a right of way over its whole length and breadth. It follows that the plaintiff had no permanent right to maintain the trees and shrubbery upon the part of the avenue of which he was seised in fee. His right to maintain them was subject to the right of the abutters to have them removed.

The master found that as the result of constructing the new street illegally laid out, the market value of the plaintiff's premises was diminished to the amount of $350. But he further found that "if the court should rule that the defendants could avail themselves of the fact that the plaintiff had not a permanent right to maintain the trees and shrubbery on said right of way, the damages which the plaintiff would be entitled to recover would be very materially reduced and difficult to estimate, and I should be unable to find, upon the evidence before me, that the plaintiff was entitled to more than nominal damages." It thus appears by the terms of the report that the damages were assessed upon a wrong basis, and that the final decree is wrong in allowing the plaintiff $350 damages and interest on account of the construction of the street.

But while the plaintiff has no permanent right as against the abutters to have the trees and shrubbery remain upon the avenue in front of his lots and owned by him in fee, still his right is subject only to this right of the abutters; and in estimating the damages suffered by him on account of the interference by strangers with this qualified right, it is proper to consider whether and to what extent the abutters would insist upon their right of way and what are the reasonable probabilities in this direction under the circumstances.

It is manifest that this view of the plaintiff's qualified right

was not considered by the master, and that if only nominal damages be allowed the plaintiff injustice might be done to him. We think, therefore, that the case should be recommitted to the master to ascertain the damages suffered by reason of this interference with this qualified right as to the trees and shrubbery upon that part of the avenue owned by him.

But the town cannot be held for this damage. The trespass of which the plaintiff complains consists of the entry upon his land and the acts done thereon. It is manifest that the act of passing the vote was not a trespass. The vote was illegal.* The town was under no legal obligation and had no power to spend money in the manner contemplated by this vote. The vote being void, the inhabitants of the town in their corporate capacity are not answerable. *Morrison* v. *Lawrence,* 98 Mass. 219. *Lemon* v. *Newton,* 134 Mass. 476. *Cavanagh* v. *Boston,* 139 Mass. 426. *Cushing* v. *Bedford,* 125 Mass. 526.

The persons, however, who committed or caused the damage are individually liable because they acted without any lawful authority, and that is so even if they were selectmen. *Moynihan* v. *Todd,* 188 Mass. 301, and cases cited. Being joint trespassers they are each liable for the whole damage. The same rule is applicable to the water commissioners.

We have considered the defendants' exceptions which were not argued in their brief as waived. From what has been said it follows that as to the exceptions argued, those relating to the liability of the town and to the question of the amount of damages recoverable for the acts done in constructing the way are sustained, and the others are overruled.

The case must be recommitted to the master for the assessment of the damages upon this part of the case, and the appeal

---

* At a town meeting on August 15, 1904, the following vote was passed: " Voted, unanimously, That we accept the locating and laying out of the proposed new street from North Main Street to Cross Street as laid out by the selectmen; that the selectmen be and they are hereby authorized and directed to build the same." The laying out of the street was illegal because the selectmen failed to file a plan as required by R. L. c. 48, § 71. At a town meeting held on May 31, 1906, the town directed the water commissioners to extend a water main from a point on Wales Street to Cross Street.

from the final decree upon this item and upon the liability of the town is sustained. In every other respect the decree is to stand.

*So ordered.*