KATHERINE O'HEARN & others *vs.* TOWN OF ADAMS.

Berkshire.     September 18, 1934. — October 24, 1934.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Municipal Corporations,* Liability in tort, Sewer.     *Sewer.*

In an action of tort against a town for injury to real estate of the plaintiff caused by the discharge of sewage thereon following the diversion into a new channel of the waters of a river into which a sewer emptied, it appeared that the diversion was made in 1912 by one who was superintendent of streets and sewers of the defendant, and was known to and paid for by the defendant; that no taking was made by the defendant of any of the land upon which work was done in connection with the diversion; and that the owner of such land did not give the superintendent permission to enter thereon for that purpose. It did

not appear that the diversion was made under the authority of any enabling statute or pursuant to any vote of the defendant, or that the defendant had accepted R. L. c. 49, §§ 1, 2. *Held,* that the defendant was not liable to the plaintiff, whether or not the superintendent acted as a public officer in making the diversion.

TORT. Writ dated October 25, 1928.

In the Superior Court, the action was referred to an auditor. Material facts found by him, and proceedings in the action, are described in the opinion. An order for judgment for the defendant was reported by *Morton,* J., for determination by this court.

*H. L. Harrington,* for the plaintiffs.

*W. J. Donovan,* for the defendant.

PIERCE, J. This is an action of tort commenced by writ dated October 25, 1928, and is brought to recover damages for injuries to real estate resulting from the overflow of the Hoosac River and discharge of sewage from an alleged common sewer on the plaintiffs' land, caused by acts of an alleged superintendent of sewers covering a period from 1912 to the date of the writ. The action was referred to an auditor under the usual rule. He filed his report on September 21, 1931. A motion was filed by the plaintiffs for the entry of judgment on the auditor's report and in the alternative for trial by jury. This motion was denied and the report was recommitted on motion of the defendant. The auditor filed his supplemental report on May 26, 1932. Subsequently, on June 4, 1932, and again in July, 1933, the plaintiffs filed motions that jury issues be framed. These proposed issues relate solely to the amount of damages alleged to have been sustained by the plaintiffs. The motions were denied, the judge ruling that the "plaintiffs' further claim of jury trial and statement of issues filed June 4, 1932, should be treated as reserving issues under Rule 88" of the Superior Court. The parties then stipulated and agreed "that the basic facts upon which the defendant's liability, if any, is to be predicated, are contained in the auditor's supplemental report . . . and that the issues reserved for trial to a jury relate solely to the amount of damages suffered by the plaintiffs from the year 1912 to October 25, 1928"; that "Both parties desire a decision upon

the basic legal questions herein contained: (1) Liability or non-liability of the defendant for the acts of O'Malley either as superintendent of streets or as superintendent of sewers. (2) As to the applicability of the six-year statute of limitations, that is, whether the plaintiffs' claims are outlawed in whole or in part. (3) As to the legality of joinder of claims for injury to personal property of three of the plaintiffs, and for nuisance caused to those three in a suit for damages to real estate brought by four plaintiffs. It is further stipulated and agreed that the facts set forth in the defendant's motion . . . are true."

The trial judge made findings and rulings on the defendant's motion and requests for rulings of law thereto annexed, and an order for judgment, which are as follows: "1. I find, in accordance with the stipulation of parties, that the facts found by the auditor in his supplemental report are true. I also find the facts stated in defendant's motion . . . are true. 2. Defendant's requests for rulings of law, numbered 1 through 17 inclusive, filed with its motion . . . , are allowed. 3. I order judgment for the defendant in accordance with the final prayer in defendant's aforesaid motion." The prayer above referred to reads: "9. Lastly, defendant moves that judgment be ordered in its favor in accordance with finding A, page 59, of the auditor's supplemental report." This finding reads: "A. If the court, under the foregoing findings of fact, shall rule that, under the law, the defences specially pleaded by the defendants . . . in . . . [its] answer or any of them constitute a complete bar to the plaintiffs recovering in this action, it follows and I find that the plaintiffs can recover nothing." The plaintiffs duly excepted to the ordering of judgment for the defendant and to the granting of the requests for rulings.

The trial judge being of opinion that the propriety of the interlocutory order and of the rulings in connection therewith should be determined by the Supreme Judicial Court before any further proceedings are had in the trial court, reported the same to the Supreme Judicial Court for determination, with the proviso that "If the plaintiffs are entitled to recover against the defendant on any ground, this case is to

be remanded to the Superior Court for jury trial, limited·
to damages. Otherwise, judgment is to be entered for the
defendant."

The plaintiffs for many years have owned a parcel of land
containing a house and barn, situate on the south side of
Lime Street in Adams. Lime Street runs in an easterly and
westerly direction across the valley drained by the Hoosac
River, which runs in a northerly direction a little westerly
of the plaintiffs' premises. The Black Hawk Brook has its
source in the mountains east of the town and its course lies
southwesterly across the southeast corner of the plaintiffs'
premises. Thereafter, after leaving the plaintiffs' land, it
continues southerly for a short distance and then westerly
near the south line of said premises, finally emptying into
the Hoosac River. The East Renfrew School of the de-
fendant is on the easterly side of North Summer Street,
southeast of the plaintiffs' land. It was erected in 1896.
The records of the town meeting held that year show ap-
propriation of money to build the school in question and
authorization to the school committee to buy a site. The
school was erected under the supervision of the school
committee. At about the time the schoolhouse was erected,
there was a sewer running therefrom to the Black Hawk
Brook, and thence in the bed of the brook southwesterly
through the southeast corner of the plaintiffs' premises
and thence southerly and westerly to a point where the
brook met the old river bed of the Hoosac River. The
sewage at this point was emptied into the river bed and car-
ried away by the waters of said river. The main channel of
the Hoosac River to the west of the plaintiffs' land is almost
parallel to the plaintiffs' western boundary, and some dis-
tance therefrom. An old bed of the same river, through
which until 1912 very little water flowed, winds through the
land in question to the east of the main channel. There
is no evidence as to who constructed the sewer but the de-
fendant had at various times accepted fees for connecting
private houses to this sewer.

In 1912, one O'Malley, in fact acting as superintendent of
streets and sewers, went on the land formerly owned by the

Renfrew Manufacturing Company, through which the main channel of the Hoosac flowed, diverted the waters of said stream into what he thought was the old bed, but what was in fact a new channel connecting with the old river bed near or on the plaintiffs' land, and also extended the sewer line so as to connect with the new channel. These actions were known to and the work was paid for by the defendant, but the latter did not expressly authorize the doing of the work nor did the owner of the land which was entered give O'Malley or his men any authority so to enter. In 1913, 1922, 1925 and twice in 1927, water from the diverted stream carrying sewage and rubbish from the sewer pipe as extended and from other places, overflowed the plaintiffs' land causing damage to realty and to personal property owned by some but not by all the plaintiffs, within the buildings thereon. The diversion by O'Malley substantially increased any damage which might have resulted if there had been no diversion. After a complaint in 1912, from which date until 1928 the defendant did no other acts with reference to the diverted stream, the plaintiffs took no further action until 1928 when this suit was brought. The auditor made findings in detail as to the amount of damages caused by O'Malley's acts from 1912 to 1928 and also as to damages sustained within six years of the bringing of the action.

The question of the liability of the town for the acts of O'Malley is fundamental, and will be considered first. It is settled that private actions will lie in situations, as in the case at bar, where a municipality is negligent in maintaining a common sewer, control of which by the municipality is authorized by statute. *Child* v. *Boston,* 4 Allen, 41, 52. *Melrose* v. *Hiland,* 163 Mass. 303, 310. *Coan* v. *Marlborough,* 164 Mass. 206, 208. It is, however, for the plaintiff to show that the town was under an obligation to do the work resulting in the injury or that the work done was done in the execution of a corporate power. *Anthony* v. *Adams,* 1 Met. 284, 286. *Bigelow* v. *Randolph,* 14 Gray, 541, 545. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 10. It should be borne in mind in the case at bar that the proximate cause of the damage to the plaintiffs, as found by the auditor, was not the

building or maintenance of the school sewer but rather the diversion of the waters of the Hoosac River so as to flow with increased force onto the land of the plaintiffs, carrying thereon sewage from the school sewer and from other places.

It was early held that a town did not have, as an incident of its powers over highways, the power, through its officers, to cause a dam to be erected on private property. *Anthony* v. *Adams,* 1 Met. 284, 286. Likewise it was held that in the absence of an enabling statute a city had no power to erect a dam on private property even though the object was to abate a nuisance. *Cavanagh* v. *Boston,* 139 Mass. 426, 433. *Smith* v. *Gloucester,* 201 Mass. 329, 333. In both of the above cases, as a result of the lack of power, the municipality was held not to be liable for the trespasses of its representatives although the latter might be personally liable. The plaintiffs have not shown in the case at bar that the acts causing the injury were done pursuant to any vote of the municipality or under any enabling authority so as to establish liability on the part of the defendant. *Gray* v. *Boston,* 277 Mass. 166, 167.

It may be assumed in favor of the plaintiffs that the acts done in the diverting of the stream may have been incidental to municipal powers to lay out sewers under R. L. c. 49, §§ 1, 2, in force at the time of the doing of the acts. The first objection to the plaintiffs' recovery under this assumption is that it does not appear that this statute had been accepted by the defendant. R. L. c. 49, § 28. St. 1869, c. 111. *Hill* v. *Boston,* 122 Mass. 344, 359. *Lemon* v. *Newton,* 134 Mass. 476, 479. In such circumstances, even had the work in question been done pursuant to a vote of the selectmen of the defendant, no municipal liability would have been entailed. *Pinkerton* v. *Randolph,* 200 Mass. 24, 28.

It may be argued on behalf of the plaintiffs that the occupation by O'Malley of private land was rightful under the power of the town to take private land for public purposes under R. L. c. 49, §§ 1, 2, or St. 1905, c. 390. But the auditor has found that there was no taking of the land on which any of the work in question was done, nor was permission secured from the owner of the land. Nor was there any showing of

compliance with the necessary formalities for the taking of private property. *Northampton* v. *Abell*, 127 Mass. 507, 509. *Whitten* v. *Haverhill*, 204 Mass. 95, 101, 102. *Stevens* v. *Worcester*, 219 Mass. 128, 130. In a recent case similar to the one at bar this court has decided that an actual occupation of land by representatives of a municipality, where the formalities attendant on the taking of land have not been met, is not a legal taking so as to render the municipality liable in tort for the acts of its representatives. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 8.

This makes it unnecessary to consider whether O'Malley, who was in fact acting as superintendent of streets of the defendant, was appointed as such under R. L. c. 25, §§ 85, 86, so as to be subject to the liabilities of surveyors of highways, and a public officer rather than an agent of the defendant. *Sherman* v. *Swansea*, 261 Mass. 407, 409 (construing a similar statute). Nor is it necessary to decide that O'Malley acted as a public officer for whose acts the defendant would not be liable. *Haskell* v. *New Bedford*, 108 Mass. 208, 211. *Manners* v. *Haverhill*, 135 Mass. 165, 171. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 9.

It follows that the defendant is not liable for the acts of O'Malley either to the owner of the land entered upon or to any one indirectly damaged by those acts. This makes it unnecessary to consider the other questions argued.

*Judgment for the defendant.*