Crosby, J.
These cases were argued together. The first *364 is an action to recover damages alleged to have been caused to certain lands of the plaintiffs in consequence of the construction and maintenance of a drain therein, the dumping of stone thereon and the discharge of surface water thereon through the drain. The answer is a general denial, and certain affirmative defences relative to the drain. Before the case was tried the defendant filed a motion to dismiss on the ground that the court had no jurisdiction since this is an action for trespass to land in Lexington and is, therefore, a local action. The motion was denied. On the first count the judge of the District Court found for the defendant as against Donald Shea; and found for the plaintiff Justin Shea in the sum of $1 because of the maintenance upon his land by the defendant of part of the drain above referred to. He found for the defendant on the claim for damages for the dumping of stone. On the second count the judge found for the plaintiff Donald Shea and assessed damages in a substantial amount. At the request of the defendant the case was reported to the Appellate Division.
The plaintiffs owned adjoining parcels of land on Massachusetts Avenue, a public way in the defendant town. While the report was pending they plugged the drain causing surface water to back up on the avenue, which endangered travel. Employees of the town sought to relieve this condition. The plaintiffs sought to enjoin the town from entering upon their lands and discharging drainage thereon, by a bill in equity filed in the Superior Court, and on a prayer for a temporary injunction an order of notice was issued. The answer of the defendant contained a counterclaim praying for a temporary injunction enjoining the plaintiffs from plugging the drain and thereby flooding the street until the rights of the parties should be determined. The case was heard in the Superior Court on the parties’ applications for temporary injunctions. At the close of the hearing the judge stated that he would deny the plaintiffs’ application, and that he was inclined to grant the defendant’s application, but no decree was entered. The plaintiffs’ attorney then stated that he would with *365 draw his bill of complaint. To this the defendant objected on the ground that it had acquired rights by reason of having included in its answer a counterclaim and by reason of the judge’s action thereon. The plaintiffs thereafter filed a motion for a final decree dismissing their bill, which was allowed subject to the defendant’s exception. A final decree was entered dismissing the bill without prejudice with costs to the defendant. From this decree the defendant appealed. This is the second case before this court, and will hereinafter be considered.
In the action at law the Appellate Division reversed the findings of the trial judge for the plaintiff Justin Shea under the first count of the declaration, and for the plaintiff Donald Shea under the second count, and ordered judgment for the defendant on both counts of the declaration. From this order the plaintiffs appealed.
1. The first count of the declaration in the action at law will first be considered. The lands owned by the plaintiffs respectively are located on Massachusetts Avenue in East Lexington, in the defendant town, and consist of four parcels, lots C and B abutting on the avenue, lot A in the rear of these lots, and the Frizelle lot, so called, abutting on the avenue and adjoining lot B. All the lots are situated on the northerly slope of a hill, the apex of which is on the southerly sidp of the avenue opposite the land in question. The plaintiff' Donald Shea took title in 1926 to lots A, B and C. In 1928 the plaintiff Justin Shea purchased the Frizelle lot. Prior to 1902, in front of the Frizelle lot a stone drain, connected with a catch basin at each end, crossed Massachusetts Avenue, which drain extended under the sidewalk and three or four feet into the Frizelle lot. In 1902, the avenue was widened and relocated by the county commissioners, and a taking was made in front of the locus for widening and general drainage purposes. The construction work in connection with the relocation was done by a contractor employed by the Lexington and Boston Street Railway Company, which had been granted a location for its tracks in the avenue. At this time the old stone drain was removed, and a new drain was constructed for a distance of *366 about forty or fifty feet into the Frizelle property. This extension of the drain was not authorized by the then owner of that property and no taking was made for it. It was done by such contractor. The drain remained and extensions thereof totalling about two hundred feet were made from time to time between 1902 and 1916. The trial judge found as follows: “In 1916, one Robert White, an employee of the town of Lexington, holding the office of superintendent of streets, by order of the selectmen of the town of Lexington, acting in their capacity as such and not as highway surveyors, entered upon the locus and replaced the existing drain with an underground earthen drain of larger dimensions [increased length and not diameter], extending through the Frizelle lot in the same location as the preexisting drain, and down into lot A ... . The drain constructed in 1916 was constructed in part, in so far as it was an extension of the existing drain, on a new location, and its enlargement and construction was of such a nature as to constitute in fact a new drain and not a continuation of the drain existing in 1902 or the one constructed in that year, but constituted a new undertaking on the part of the town of Lexington without legal sanction, except as it was constructed under the authority and direction of the board of selectmen of Lexington.” The above finding, that White acted under the direction of the selectmen of the town, acting as such, in laying the drain in 1916, is not justified by the evidence, and the Appellate Division rightly so ruled. There was evidence that the same persons were elected selectmen and surveyors of highways in Lexington from 1902 to 1917 and that the same persons were selectmen and road commissioners from 1917 to 1921 inclusive. St. 1922, c. 1, was accepted by the town, and there was evidence from the records of the selectmen of the defendant that in 1910 White was appointed superintendent of streets “with the understanding all work is to be done under the direction of the surveyors of highways . . .”; and that in the six years from 1911 to 1916, White was appointed superintendent of streets, and no restriction upon his duties or upon his method of exercising his office appears upon *367 the records. There was further evidence that the selectmen and surveyors of highways were the same persons; that there was no distinction between the meetings of the surveyors of highways and meetings of the selectmen; and that the records concerning the appointment of White were records of the selectmen although references to action by the surveyors of highways appear in them and there no separate record of surveyors of highways.
White testified that from time to time his department did work on the Frizelle drain and that he got his directions from the selectmen; that before doing work on the plaintiffs’ land he had talked with the selectmen; that he remembered talking with one Spaulding who was at that time a selectman but who is now dead; that he did not remember talking with any other member of the board, and was unable to remember that the men with whom he talked told him in what capacity they were acting; that he remembered that there were at one time surveyors of highways in Lexington; and that he remembered talking with them about different work, but did not recall the exact time when the town ceased to have surveyors of highways.
The most that this evidence shows is that the selectmen and surveyors of highways were the same persons at the time the work in question was done; that the records of the selectmen, which were the same as those of the surveyors of highways, show the appointment of White as superintendent of streets; that White said he got his directions for doing the work from the selectmen; and that he was unable to remember that the men with whom he talked told him in what capacity they were acting. There was therefore nothing upon which to base a finding as to the capacity in which the men were acting when they gave White his orders. Malinoski v. D. S. McGrath, Inc. 283 Mass. 1, 10. The same persons were elected selectmen and surveyors of highways at the time the drain was constructed in 1916. Surveyors of highways at that time had the exclusive control of the ordinary repair and care of highways. R. L. c. 25, § 81 (G. L. [Ter. Ed.] c. 41, § 62). See Twombly v. Selectmen of Billerica, 262 Mass. 214, 217, *368 219; Tuckerman v. Moynihan, 282 Mass. 562, 564, 566. In a town which had not elected a surveyor of highways, the selectmen appointed a superintendent of streets, who under the direction of the selectmen had full charge of care and repairs of highways, and in relation to such matters such superintendent of streets had "the powers, performed the duties, and was subject to the same liabilities and penalties as surveyors of highways. R. L. c. 25, §§ 85, 86 (G. L. [Ter. Ed.] c. 41, §§ 66, 68). See Moynihan v. Todd, 188 Mass. 301, 302; Blaisdell v. Stoneham, 229 Mass. 563, 565; O’Hearn v. Adams, 288 Mass. 185, 191. Highway surveyors having been elected here, there was no occasion to resort to R. L. c. 25, §§ 85, 86. There is no evidence of a vote of the town or other official action giving the selectmen, as such, authority or control over the care and repair of highways, or manifesting an intention on the part of the town to take these duties from the public officers who had been duly elected for this purpose. There was likewise no showing of the legal authority under which these individuals, who were elected both highway surveyors and selectmen, intended to act when White, the superintendent of streets, was directed to lay this drain. The act of White in laying the drain, even if unlawful, was connected with the diversion of surface water- from Massachusetts Avenue, and thus must be regarded as having been done to keep the streets in repair and safe for travel. See Dupuis v. Fall River, 223 Mass. 73, 75; Blaisdell v. Stoneham, 229 Mass. 563. No other reason could exist for the giving of such an order, and no justification could be found for such an act other than in the statutory duty to care for and repair highways. R. L. c. 25, § 81 (G. L. [Ter. Ed.] c. 41, § 62). The exclusive control of such repairs was in the highway surveyors then chosen. R. L. c. 25, § 81 (G. L. [Ter. Ed.] c. 41, § 62). Therefore, on this record, if a finding as to the capacity in which these individuals, who were both selectmen and surveyors of highways, were purporting to act in directing this work to be done would be justified at all, it would be that they were acting as highway surveyors, Pratt v. Weymouth, 147 Mass. 245, *369 254. Dupuis v. Fall River, 223 Mass. 73, 75. Malinoski v. D. S. McGrath, Inc. 283 Mass. 1, 9. Acting as such they would be public officers and not agents of the town, and the town would not be liable for their acts, or the acts of their subordinates. Clark v. Easton, 146 Mass. 43. Anglim v. Brockton, 278 Mass. 90. Malinoski v. D. S. McGrath, Inc. 283 Mass. 1. The finding of agency, therefore, upon which the trial judge apparently charged the town with liability was not justified upon the evidence. The cases of Butman v. Newton, 179 Mass. 1, Waldron v. Haverhill, 143 Mass. 582, and Hawks v. Charlemont, 110 Mass. 110, are plainly distinguishable from the present case. As to the contention of the plaintiffs in the specifications as to count 1, that the defendant had dumped stone on their lands, there was no evidence that the town had done this work through its servants or agents. The finding for the defendant with respect to that claim was correct.
2. The second count of the declaration was to recover for damage to the property of the plaintiffs alleged to have been caused by water diverted thereon. The judge found that “In 1916 the drainage of surface water flowing through this drain, while harmful to the property and in violation of the legal rights of the then owners, did not continuously seriously' interfere with their enjoyment thereof. There were times when excessive drainage would temporarily interfere with the enjoyment of the property; but during the greater part of the year the land was still useable and could be traversed on foot or on horseback without danger of sinking into it because of its wet condition. In 1923 the defendant resurfaced a street [Oak Street] . . . running in part from the apex of the hill down to Massachusetts Avenue at a point almost directly opposite the Frizelle property. In the course of surfacing this street, the defendant constructed open stone drains on each side of the street, each of which carried the surface water from the street to two catch basins . . . said catch basins were in turn connected with [other] catch basins . . . which were in turn connected with the manhole in front of the *370 Shea property. The construction of this drainage system resulted in the gathering together of great quantities of surface water which could not have been discharged normally through percolation and natural drainage into the locus but which by reason of said drainage system were, in fact, thereafter gathered together and discharged into lot A in such quantities . . . [that] from 1923 to the date of these hearings [they] completely . . . [saturated] the top and subsoil of lot A, to a point where the land, in its then and present condition, was and is not fit for any useful purpose.” The judge further found that "Since the date of the purchase of these properties the flow of the water into lot A has converted it into a swamp and there has been a partial destruction of the rental value of lots B and C, and of the Frizelle property.” There was evidence that prior to 1902 surface water from Oak Street and part of Massachusetts Avenue flowed into the locus through the stone drain which was there at the time; that in 1902 the old stone drain was replaced by a manhole in the sidewalk in front of the Frizelle lot and a series of catch basins was constructed in Massachusetts Avenue including one at the foot of Oak Street, which manhole, catch basins and drains have not since been changed. From this manhole water was discharged by the pipe extending into the Frizelle lot. The drain constructed in 1916 continued the discharge of water into the locus but did not seriously interfere with its enjoyment. The alleged damage by flooding the land, for which damages were assessed, was caused when Oak Street was resurfaced and the catch basins therein were constructed. The trial judge made no specific finding as to what board or officer so diverted the water from Oak Street, but it was done by White, hereinbefore referred to. Presumably the work was done under the direction of the selectmen, who, in 1923, were road commissioners. They acted in the latter capacity by virtue of the acceptance by the town of St. 1922, c. 1, which provided that the board of selectmen of the town should be a board of public works, and in such capacity should have all the powers and duties vested by law in certain boards
*371 and officers, among which were road commissioners. It does not appear when the act was accepted. It is assumed that such acceptance was before the work was done on Oak Street. Road commissioners, when chosen, “shall exclusively have the powers, perform the duties and be subject to the liabilities and penalties of selectmen and surveyors
I of highways relative to public ways . . . .” G. L. c. 41, § 64. Acting as such they are public officers and not agents of the town. Clark v. Easton, 146 Mass. 43. Wood v. Concord, 268 Mass. 185, 190, and cases cited. It is plain that in the absence of evidence that the construction of these drains and the discharge of water were caused by the acts of individuals acting as agents of and for the town, there can be no liability imposed upon it for any damage caused thereby. Malinoski v. D. S. McGrath, Inc. 283 Mass. 1, 10. There was no evidence that the original drain, which discharged water on the locus, was constructed by agents of the town. The drain constructed in 1902 was not placed there by agents of the defendant. The drain laid by White in 1916 was, upon a reasonable construction of the evidence and the inferences properly drawn therefrom, placed there by him acting as the agent of public officers and not as the agent of the town. The reconstruction and repair of Oak Street likewise were performed by him acting for public officers. Agency for the town has not been proved in any case. As the drain laid in 1916 was originally constructed by public officers or their agents, and the additional flowage of water upon the plaintiffs’ lands was brought about by the acts of public officers or their agents, there is no liability on the part of the town in this action. Smith v. Gloucester, 201 Mass. 329. Dupuis v. Fall River, 223 Mass. 73, and cases cited. Malinoski v. D. S. McGrath, Inc. 283 Mass. 1, 9. In Blaisdell v. Stone-ham, 229 Mass. 563, it was said at page 565: “An officer charged with the duties of a surveyor of highways is a public officer, and not an agent of the town. . . . An action of tort at common law will not lie against a city or town for diverting the surface water from its streets in order to keep them safe, and causing it to flow upon adjoining
*372 premises, even when the surface water is drained into a culvert or watercourse. The remedy is under the statute. R. L. c. 51, § 15, now St. 1917, c. 344, Part IV, § 21. Wood-bury v. Beverly, 153 Mass. 245. Bainard v. Newton, 154 Mass. 255. Holleran v. Boston, 176 Mass. 75.” The statutes make provision for damages resulting from repairing highways. G. L. (Ter. Ed.) c. 84, § 10 (R. L. c. 51, § 15). There is also a special provision with regard to drains from ways. G. L. (Ter. Ed.) c. 83, § 4. It is plain that no action of tort would lie against this defendant for the reason that it does not appear that the town ever assumed to per- • form by means of its agents any of the work performed. Cases like Bates v. Westborough, 151 Mass. 174, and Diamond v. North Attleborough, 219 Mass. 587, cited by the plaintiffs, are not applicable. Contentions based on these cases are disposed of by what was said in Blaisdell v. Stoneham, 229 Mass. 563, 565, and cases there cited. It follows that the plaintiffs are not' entitled to recover under the second count of the declaration and the Appellate Division so ruled. Its order that judgment be entered for the defendant on both counts of the declaration as against both plaintiffs was correct.
3. The suit in equity was brought by the same plaintiffs as are named in the action at law against the town of Lexington. This suit was brought in the Superior Court before the action at law had been decided by the Appellate ■ Division. In the suit in equity the plaintiffs seek to enjoin the town of Lexington and its servants and workmen from trespassing upon the lands of the plaintiffs and from discharging surface water thereon; and seek damages. The defendant included in its answer a counterclaim asking that the plaintiffs be enjoined from plugging the pipe and flooding the street until the rights of the parties as to the disposal of this surface water should be finally determined. The parties were heard by a judge on the question, of the issuance of a temporary injunction. At the end of that hearing the judge stated that he would deny the plaintiffs’ application for a temporary injunction and was inclined to grant the defendant’s application for a tern *373 porary injunction. Thereafter the plaintiffs filed a formal motion for a final decree dismissing their bill without prejudice, which was allowed subject to the exception of the defendant. A bill of exceptions to that effect was allowed. A final decree was entered dismissing the plaintiffs’ bill without prejudice and with costs to the defendant. From that decree the defendant appealed. Under the present practice in equity there may be both exceptions, G. L. (Ter. Ed.) c. 214, § 25A; c. 231, § 113, and appeal from a final decree, c. 214, § 19. Siciliano v. Barbuto, 265 Mass. 390.
It is the contention of the defendant that the plaintiffs were not entitled to have the bill dismissed since the defendant had acquired rights by filing a counterclaim. It is a general rule that the court will dismiss a bill with costs on the plaintiff’s motion, unless something has been done in the case which entitles the defendant, on equitable grounds, to have the cause finally disposed of on the merits. If there has been a decree or other proceeding whereby the defendant’s position has been changed, and he has acquired rights which did not exist or had not been determined when the suit was brought, and it is equitable that these rights should be fully secured by further proceedings in the case,- the judge will retain the cause for a decision on the merits. The action to be taken depends upon whether anything has been done by the court or the parties that has changed the position in which the parties were when the suit was begun. Something more than the incidental annoyance of a second suit for the same cause is required to prevent a decree allowing a dismissal without prejudice on payment of the defendant’s costs. The plaintiff is allowed to have his bill dismissed on the assumption that it leaves the defendant where he stood if the suit had not been instituted, and there must be some manifest legal prejudice to the defendant’s rights to warrant a denial of the motion to dismiss. If the defendant has acquired some right which might be lost or rendered less efficient by the dismissal, then the judge in the exercise of a sound discretion may deny the motion. Hollings *374 worth & Vose Co. v. Foxborough Water Supply District, 171 Mass. 450, 452. Kyle v. Reynolds, 211 Mass. 110, 111. Bullivant v. First National Bank of Boston, 246 Mass. 324, 330. Bolton v. Van Heusen, 249 Mass. 503, 505. This general rule is applicable after a counterclaim has been filed under Rule 32 of the Superior Court (1932). Thereafter, as before, the defendant’s right to insist that the original bill be retained depends upon the existence of circumstances which make it inequitable for the plaintiff to discontinue his suit without a hearing on the merits. “The usual ground for denying a complainant in equity the right to dismiss his bill without prejudice at his own costs is that the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by being remitted to a separate action. Having been put to the trouble of getting his counter case properly pleaded and ready, he may insist that the cause proceed to a decree.” Ex parte Skinner & Eddy Corp. 265 U. S. 86, 93, 94. The only proceeding in the present suit prior to the motion for dismissal, except the filing of an answer containing a counterclaim, was a hearing on the applications for temporary injunctions. It is plain from the record that the trial judge and parties thought that a final decree dismissing the bill was entered which in effect disposed of the counterclaim and put an end to this litigation. The plaintiffs might properly have been allowed to dismiss their bill by an interlocutory decree which would not impair the rights of the defendant "to an adjudication upon the counterclaim. Callahan v. Mercantile Trust Co. 188 Mass. 393, 398, and cases cited. It follows that the exceptions must be sustained. The plaintiffs had a right to dismiss their bill and to have an interlocutory decree to that effect, but not to have a final decree disposing also of the counterclaim. The final decree must be reversed.
In the action at law the entry will be order of Appellate Division affirmed. In the suit in equity the entry will be exceptions sustained; decree reversed.

Ordered accordingly.